## HEISEMAN *v.* LOWENSTEIN.

### Opinion delivered June 15, 1914.

1. WILLS—TRUSTS—EQUITY—JURISDICTION.—Where a trust is created by a will, a court of equity has jurisdiction to construe the will. (Page 413.)

2. WILLS—INTENTION OF TESTATOR—CREATION OF A TRUST.—Where a testator left an estate consisting of real estate and stock in corporations, and provided simply for the payment of cash legacies to his relatives, it will be held that the will created a trust. (Page 414.)

3. ADMINISTRATION—EXECUTORS—POWER TO SELL OR MORTGAGE.—An executor has no power to sell the land of his testator unless directed to do so by the will, either expressly or by necessary implication. (Page 416.)

4. ADMINISTRATION—RIGHT OF EXECUTOR TO SELL REAL ESTATE.—Because the testator has a right to dispose of his real estate as he sees fit, if he directs that to be done by his executors, which necessarily implies that the estate is first to be sold, a power is given by implication to the executors to make such sale and execute the requisite deeds of conveyance. (Page 416.)

5. ADMINISTRATION—TRUSTS—POWER OF SALE.—No particular form of words is necessary to create a power of sale. Any words which show an intention to create such power, or any form of instrument which imposes duties upon the trustee that he can not perform without a sale, will necessarily create a power of sale in the trustee. (Page 416.)

6. TRUSTS—POWER TO MORTGAGE.—A mere power of sale does not include a power to mortgage. (Page 416.)

7. WILLS—POWER TO MORTGAGE REAL ESTATE.—When a testator by his will bequeathed only legacies in money, and directed his executors to close up his estate as quickly as possible, it will not be held that the executors have power to mortgage any of the testator's property. (Page 416.)

8.  ADMINISTRATION—POWER TO LEASE.—Executors of an estate may
    lease the real property of the testator, for such time as may be
    necessary, until they exercise their authority under the will, to
    sell the same. (Page 417.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

### STATEMENT BY THE COURT.

Appellants, as executors of the will of Abe Stiewel, deceased, instituted this action in the chancery court against appellees, who are devisees and legatees under the will. The object of the complaint is to have a construction of the will and the directions of this court as to the duty and power of the executors in selling, mortgaging, and leasing the lands of their testator. Abe Stiewel died in Little Rock, Pulaski County, Arkansas, on the 25th day of August, 1913, and the will was duly admitted to probate and appellants qualified as executors under the will. The will is as follows:

"1.  I desire that all of my debts shall be paid in full.

"2.  It is my desire that my sister, Mrs. Emilie Lowenstein, in addition to insurance for one thousand ($1,000) dollars in the order of B'nai B'rith, which she holds on my life and money she has on deposit with me, shall receive from my estate the sum of twenty thousand ($20,000) dollars and interest in the manner herein provided for, as follows, towit: That is to say, the executors of my will shall cause to be deposited in a proper and solvent trust company the sum of twenty thousand ($20,-000) dollars at the best rate of interest they can obtain therefor to the credit of said Emilie Lowenstein, conditioned that she shall not draw exceeding the sum of two hundred ($200) dollars per month as long as she may live, or the said fund may last; said money to be so deposited as soon as an order, if required, can be obtained from the probate court having jurisdiction of my estate to do so.

"2.  Should my said sister die before the said sum is exhausted, then her son, Julius Frank, if living, shall receive five thousand ($5,000) dollars of said sum so re-

maining to be paid to him in like manner, that is, at the rate of two hundred ($200) dollars per month by said trust company, and the remainder of said sum of twenty thousand ($20,000) dollars shall be disposed of as hereinafter set forth.

"3. It is my desire that my sister, Mrs Fannie Shield, shall receive from my estate the sum of fifteen thousand ($15,000) dollars, and interest, in the following manner, towit: That is to say, the executors of my will shall cause to be deposited in a proper and solvent trust company the sum of fifteen thousand ($15,000) dollars, at the best rate of interest they can obtain therefor, to the credit of said Fannie Shield, conditioned that she shall not draw exceeding the sum of two hundred ($200) dollars per month so long as she may live, or the said fund may last, said money to be deposited as aforesaid as soon as an order, if required, can be obtained from the probate court having jurisdiction of my estate to do so, and if any part of said fund shall remain on hand at my sister's death, it shall be disposed of as hereinafter set forth.

"4. It is my desire that my sister, Mrs. Julius Meyer, shall receive from my estate the sum of fifteen thousand ($15,000) dollars free from the claims or control of her husband or her sons; said sum to be forwarded by my said executors to Rudolph Richard, of Selma, Alabama, son-in-law of said Mrs. Julius Meyer, as soon as the order, if required, of said probate court can be obtained so to do, conditioned that said Rudolph Richard shall deposit said money in some solvent trust company at a fair rate of interest, and that my sister, Mrs. Julius Meyer, shall not draw exceeding the sum of two hundred and fifty ($250) dollars per month so long as she may live or the said fund may last. Should my sister die before the said sum is exhausted, then her four (4) daughters named Lillian, Sadie, Gertie and Hulda, are to be the recipients of the two hundred and fifty ($250) dollars per month in lieu of their mother, until their death, or the fund is exhausted.

"5.   It is my desire that my brother, H. I. Stiewel, in addition to any indebtedness he now owes me (which I hereby remit), shall receive from my estate the sum of ten thousand ($10,000) dollars, and interest, to be paid to him by my executors as follows, towit:   That is to say, they shall pay to him the sum of five hundred ($500) dollars in cash and the sum of nine thousand, five hundred ($9,500) dollars shall cause to be deposited in a proper and solvent trust company at the best rate of interest they can procure therefor, to the credit of said H. I. Stiewel, conditioned that he shall not draw exceeding the sum of one hundred and fifty ($150) dollars per month so long as he may live or the said fund may last; said sum to be so deposited as soon as the order, if required, of said probate court can be obtained so to do.   Should any of the said sum of nine thousand five hundred ($9,500) dollars and interest remain on hand on the date of his death, it shall be disposed of as hereinafter set forth.

"6.   It is my desire that my nephew, Julius Frank, shall receive from my estate in addition to the legacy referred to in the second paragraph of this will the sum of one thousand ($1,000) dollars from my said executors as soon as an order, if required, can be obtained from said probate court to do so.

"7.   It is my desire that my nephew, Albert Shield, and my niece, Carrie Shield, shall respectively receive from my estate the following sums, towit:   Albert Shield, one thousand ($1,000) and Carrie Shield two thousand five hundred ($2,500) dollars, from my executors as soon as an order, if required, can be obtained from said probate court to do so.

"8.   It is my desire that my executors shall pay the following amounts respectively to my nephews and nieces hereinafter named in this paragraph as soon as the order, if required, of said probate court can be obtained to do so, towit:   One hundred ($100) dollars each to my niece, Edna Shield, my nephew, Julius Shield, my nephew, Morris M. Meyer, my nephew, Arthur Meyer, my niece, Elsie Richard (*nee* Meyer).

"9.  I desire that my executors shall pay over to my niece, Elsie Richard (*nee* Meyer) for her three (3) children the sum of five hundred ($500) dollars as soon as they obtain the order, if required, of said probate court to do so.

"10.  It is my desire that my nieces, Gertie Meyer, Lillian Meyer, Sadie Meyer, and Hulda Meyer, shall each receive from my estate the sum of twenty-five hundred ($2,500) dollars to be paid by my executors to Rudolph Richard, of Selma, Alabama, in trust for them, conditioned that he shall pay over said sum in such installments or manner as to him may seem best calculated to meet their needs.  But in any event to be paid over on the marriage of each of them; in the event either of said nieces shall die before the said legacy shall be paid to her, the same shall go to the surviving ones among my said nieces.  In the event of the marriage of any of said nieces, their husband shall have no control over said amount; should any of said nieces die before me, the sum so devised shall go as hereinafter provided.

"11.  It is my desire that my niece, Carrie Mothner (*nee* Richard), shall receive from my estate the sum of twenty-five hundred ($2,500) dollars and interest in manner following, towit:  My executors shall, as soon as an order, if required, of said probate court shall be obtained so to do, cause to be deposited in a proper and solvent trust company to her credit at the best rate of interest they can obtain the said sum conditioned that she may draw not exceeding one hundred ($100) dollars per month thereof so long as she may live or said fund shall last, and her husband shall have no control over the same, and if any of said amount is still on hand at her death, it shall be given to her children as if she was living.

"12.  To my nephew, Morris S. Richard, I bequeath fifteen hundred ($1,500) dollars in addition to the indebtedness he now owes me (which I remit), and to my nephew, Sidney Richard, I also bequeath fifteen hundred ($1,500) dollars, which said sums my executors, as soon as an order can be obtained, if required so to do, shall cause to be deposited in some proper and solvent trust

company at the best rate of interest they can obtain in the names of said nephews, respectively, conditioned that neither of said nephews shall draw exceeding fifty ($50) dollars per month of said fund, so long as they may respectively live or said fund may last. Should any part of either of said sums remain on hand at the death of either of my said nephews, it shall be disposed of as hereinafter set forth.

"13. My executors shall cause to be paid out of my estate to my sister-in-law, Mrs. Hattie Stiewel, in trust for her three children, the sum of twenty-five hundred ($2,500) dollars as soon as they can get an order, if required, of the said probate court so to do; in addition to said sum they shall cause to be deposited in some proper and solvent trust company the sum of ten thousand ($10,-000) dollars at the best rate of interest they can obtain, and the said sum shall be paid *pro rata* to my nieces, Theresa and Sadie Stiewel, and my nephew, Morris Stiewel, so that each shall receive a third thereof when they shall become of age or marry; and if either before date of distribution shall die one before the other, the share of such one shall go to the others, the interest, however, accumulating on said amount may be used to defray expenses of the support and education of such children and may be paid over to their guardian or mother for this purpose.

"14. My executors shall, as soon as an order, if required, of said probate court can be obtained so to do pay to my four nephews, Harry Vernon Stiewel, Robert Stiewel, Louis Stiewel, and Roy Julian Stiewel, two hundred and fifty ($250) dollars each.

"15. If any legatee shall die before me the legacy left him or her by this will shall lapse.

"16. All sums or amounts not required to pay debts, cost of administration, executors and other expenses and all amounts or parts of my estate not above specifically devised, shall go to my heirs to correspond in the distribution thereof to the proportion which the several legacies above given bears to the entire value of my estate.

"17. I nominate as executors of this will and testament, A. M. Heiseman, Jacob Niemeyer and Morris M. Cohn, and in case of death, or other disqualification or refusal of either of said persons to act as such, then the remaining two may act, and selecting a third person to act with them as such executor, or two may act, but not less than two executors shall act, and the sum of $5,000 is hereby set apart to be and constitute full compensation for all services performed by said parties *as such* executors; if they desire to charge that sum or any part thereof. I desire that the said persons may act as such executors without being required to give bond as such as it is my desire that said executors shall close up the estate committed to their charge as speedily as possible, so that the creditors of my estate, if they are any, and my legatees may promptly receive what is due to them.

"18. Should my estate be insufficient in amount to pay all of the legacies above mentioned after payment of expenses, debts, and executors and costs, the legacies shall be proportionately reduced."

The following facts were proved: The appraised value of the estate left by the testator is about two hundred thousand dollars. The debts owed by the estate amount to about one hundred thousand dollars. The testator left very little cash, and his estate comprised both real and personal property, but consisted chiefly of real estate. His personal property consisted chiefly of stocks in certain corporations. He owned 3,150 shares of Arkansas and Arizona Copper Company stock; 326½ shares of stock in the National Copper Mining Company; 70 shares of stock in the Ozark Diamond Company; and 310 shares of stock in the Southern Trust Company of Little Rock. The evidence shows that this stock could not be disposed of to advantage by public sale, as required by statute. Part of the real estate owned by the testator is situated on Second and Main streets, in the city of Little Rock, for which he paid seventy-five thousand dollars. The present value of it is estimated at one hundred and thirty-five thousand dollars. On the day Mr. Stiewel

died, he made an agreement with the Bankers' Trust Company, whereby he agreed to give it a lease of that property for a period of thirty years at a rental of 6 per cent; on a one hundred and fifty thousand dollar valuation for the first ten years, 6 per cent; on a valuation of one hundred and sixty thousand dollars for the next ten years; and 6 per cent on a valuation of one hundred and seventy thousand dollars for the third ten years. By the same document he gave the bank an option to buy the property for the sum of one hundred and fifty thousand dollars, provided it exercise the option within one year. It was also provided that Stiewel should have the right to sell to any other purchaser if he desired to do so, with the privilege to lessee of having the right to buy at the same price. After Stiewel's death, his heirs and legatees named in his will, who are appellees in this action, executed a document whereby they ratified and carried into effect the said agreement. The evidence shows that this property can not be sold to advantage at public sale. It also shows that the other real estate mentioned in the will can not be sold to advantage at public sale.

The chancellor sustained a demurrer to the complaint of appellants, and the case is here on appeal.

*Morris M. & Louis M. Cohn,* for appellants.

1. The court should construe the will. A suit of this character comes properly within the jurisdiction of a court of equity. The proposition that where a trust is created by a will, a court of equity has jurisdiction to construe the same, is a principle well established and long recognized by this court. 97 Ark. 588-590; 38 Ark. 435; 4 Ark. 302; 88 Ark. 5; 104 Ark. 439; 78 Ark. 111-114, and cases cited; 84 Ark. 557; 95 Ark. 434-437. See, also, 187 Mass. 524; 73 N. E. 546; 1 L. R. A. 80, note.

2. The will invested the executors with power to sell, mortgage or lease or otherwise manage the said estate, as they might deem most beneficial. It provides for the payment of the legacies in *cash,* and contemplates a general distribution in *cash* of any balance or surplus remaining after the payment of the specific legacies.

The rule is to construe a will so as to give effect to what appears to be the intention of the testator, in view of all the provisions of the will, and when ascertained, this intention will be carried out unless it is contrary to law or against public policy. 13 Ark. 513-518; 90 Ark. 152-154; 31 Ark. 580-588; 98 Ark. 553-561.

No particular form of words is required to give rise to a power, if the intention to create or reserve one can be ascertained in the instrument upon which the claim of power is rested. 6 Ala 550; 9 Pa. Co. Ct. Rep. 119; 33 Grat. 97; 3 Brewst. 438; 76 Mo. 498; 36 N. J. Eq. 376; 1 Wharton, 252; 44 N. Y. S. 19; 2 Dem. Sur. (N. Y.) 243; 96 Ill. App. 38, and cases cited *infra*. A power of sale, coupled with a trust, arises where the duties under the trust can not be performed without making a sale. Implied power to sell will arise where necessary in order that the terms of the will may be carried out. 115 Ill. 591, 4 N. E. 257; 178 Ill. 46, 52 N. E. 1048; 193 Ill. 641, 61 N. E. 1056; 30 Me. 523; 16 Pick. 107, 26 Am. Dec. 645; 20 Pick. 25; 8 Gray 392; 72 N. J. Eq. 651, 66 Atl. 903; 18 Abb. (N. C.) 82; 47 Hun, 285; 113 N. Y. 232, 21 N. E. 70; 37 Hun, 19; 62 Hun, 445; 16 App. Div. 395; 49 *Id.* 400; 5 N. Y. 136; 160 N. Y. 278; 53 S. W. 1101; 49 Wash. 288; 135 Wis. 60.

It follows that a power of sale along with a trust must be implied from the terms of a will which contemplates that a sale shall be made and the proceeds distributed by the executors, or contemplates a mixed fund out of which debts or legacies are to be paid. In other words, where the duty of the executors will bring them into control of the proceeds of land, then, since there is a responsibility imposed upon them in regard thereto, a power supported by a trust will necessarily rest in them. 187 Mass. 524; 85 Neb. 60; 66 Wis. 366; 50 N. J. Eq. 635; 102 Mass. 268; 45 N. Y. Supp. 57; 19 N. J. Eq. 121; 90 N. C. 607; 73 Ark. 589; 43 Ark. 504; 18 Ark. 85; 65 Ark. 129; 95 N. C. 131; 115 Ill. 591; 2 D. & B. Eq. 209; 30 Me. 523; 68 N. C. 68; 95 Fed. 585.

This is true especially where there is a simple, sweeping provision in the will whereby legacies and debts are broadly directed to be paid, as in this case. 6 Ala. 550; 17 N. J. Eq. 126; 38 N. J. Eq. 126; 29 *Id.* 396; 36 Ill. 293; 15 Ill. 103; 29 Ill. 116; 2 Johns. Ch. 254; 42 N. J. Eq. 127; *Id.* 504; 6 N. J. Sup. Ct. 374; 25 Hun 7; 5 Wharton 524; 34 Am. Dec. 572; 13 Grat. 587.

3.   The executors have power to mortgage the real estate, if they deem the same wise and for the best interests of all concerned.

The "legal conveyance" theory of a mortgage is in force in this State.   7 Ark. 310; 18 Ark. 166; 32 Ark. 478; 34 Ark. 346.

Under this theory a mortgage is no more than a deed or conveyance of property upon condition subsequent, and, as such, power to execute has often been held to be included within a general power, whether express or implied, to sell and dispose of property for the payment of debts and legacies.   36 N. J. Eq. 169, and cases cited; 75 Ga. 130; 42 Pa. St. 263; 73 *Id.* 182; 38 *Id.* 118; 87 Iowa, 255; 1 Rawle, 236; 6 Tex. 102-111; 1 Watts, 386; 4 W. & S. 100; 4 Myle & A. 267; 9 Barb. 585; 9 Baxt. 466; 15 La. Ann. 386.

They have power under the will to execute warranty deeds, that power being included in the power of sale.   1 J. J. Marsh, 285; 19 Am. Dec. 92; 15 Vt. 155; 8 How. 451.   A power of sale also includes the power to execute leases.   5 Johns. Ch. 163; 3 Day, 388; 1 Disn. 434; 1 Wheat. 166; 1 Gray, 333; 7 Wend. 446.

HART, J., (after stating the facts).   In the case of Williamson v. *Grider,* 97 Ark. 588, the court said:

"Where a trust is created by a will, a court of equity has jurisdiction to construe the will.   The power is incident to the jurisdiction which courts of chancery have over trusts.   And this upon the theory that 'as chancery will compel the performance of trusts, so it will assist trustees and protect them in the due performance of the trusts, whenever they seek the aid and discretion of

the court as to its establishment, management, and execution.''

So, also, in the case of *Davis* v. *Whittaker,* 38 Ark. 435, the court said:

''Such suits are within the ordinary jurisdiction of courts of quity. They are commonly entertained as the suits of the trustees or executors seeking the aid, advice, and protection of the court in the execution of the trust,'' etc.

In regard to the construction of wills, in the case of *Parker* v. *Wilson,* 98 Ark. 553, the court said:

''The power of one, legally competent to make a will, to dispose of his property as he sees fit, subject to the restrictions provided by the statutes, is a legal incident to ownership. In construing the provisions of a will, the intention of the maker is first to be ascertained, and, when not at variance with recognized rules of law, must govern. The intention of the testator must be gathered from all parts of the will, and such construction be given as best comports with the purposes and objects of the testator, and as will least conflict.'' See, also, *Gregory* v. *Welch,* 90 Ark. 152.

Tested by these principles, we think the will in question created a trust. The testator was a business man of long experience and knew the extent of his indebtedness and the amount and kind of property held by him. He knew that he had very little cash on hand, and that his estate consisted for the most part of real property, and the balance of personal property of speculative value. After the payment of his debts, he directed that legacies should be paid by his executors to certain of his relatives; that these legacies should be paid in cash, and the amount thereof should be deposited in trust companies to be paid to the legatees in the manner directed by the will. The seventeenth clause of his will provided that his excutors ''shall close up the estate committed to their charge as speedily as possible so that the creditors of my estate, if there are any, and my legatees may promptly receive what is due to them.'' The testator also recognized that his whole estate might be insufficient for the purpose of

paying his debts and the specific legacies provided in the will; for the last clause of his will provides: "Should my estate be insufficient in amount to pay all of the lega-. cies above mentioned after payment of expenses, debts, and executors and costs, the legacies shall be proportionately reduced." This brings us to the question of whether the executors were given the power in the will to sell, mortgage or lease the property. It is .well settled that an executor has no power to sell the land of his testator unless directed to do so by 'the will either expressly or by necessary implication. In this case the will does not give the executors express authority to sell the real estate. It is equally well settled that, because the testator has a right to dispose of his real estate as he sees fit, if he directs that to be done by his executors, which necessarily implies that the estate is first to be sold, a power is given by implication to the executors to make such sale and execute the requisite deeds of conveyance. *Going* v. *Emery,* 16 Pick. (Mass.) 107; *Lippincott's Executors* v. *Lippincott,* 19 N. J. Eq. 121. In the latter case the court held:

"The appointment of one as executor of a will that directs lands to be sold, does not, of itself, confer on him the power to sell. But if the executor is directed by the will, or bound by law, to see to the application of the proceeds of the sale, or if the proceeds, in the disposition of them, are mixed up and blended with the personalty— which it is the duty of the executor to dispose of and pay over—then a power of sale is conferred on the executor by implication." See, also, *May et al.* v. *Brewster et al.,* 73 N. E. (Mass.) 546.

In 2 Perry on Trusts (4 ed.), § 776, the author says:

"No particular form of words is necessary to create a power of sale. Any words which show an intention to create such power, or any form of instrument which imposes duties upon the trustee that he can not perform without a sale, will necessarily create a power of sale in the trustee."

Tested by these legal principles, we think the will conferred upon the executors the power to sell the lands of the testator. As we have already seen, the bulk of his estate consisted of real property, and several legacies were left which the testator directed to be paid in cash. His directions in this respect could not be complied with unless the executors had the power to sell the real estate left by him. He directed his executors to close up the estate committed to their charge as speedily as possible, so that his creditors might be promptly paid and the legatees promptly receive what is due them.

We now come to the question as to whether a power of sale includes a power to mortgage. There is some conflict in the authorities on this question, but we believe that the better reasoning, if not the weight of authority, is to the effect that a mere power of sale does not include a power to mortgage. *Stokes* v. *Payne,* 58 Miss. 614; *Bloomer* v. *Waldron,* 3 Hill (N. Y.) 361; *Perry* v. *Laible,* 31 N. J. Eq. 566; *Willis* v. *Smith,* 66 Tex. 31; *Hubbard* v. *German Congregation,* 34 Ia. 34; *Cumming* v. *Williamson,* 1 Sanford's Chancery (N. Y.) 17. This results from the fact that a mortgage is regarded as a security for debt rather than a conditional estate, and hence its execution is regarded as creating an encumbrance rather than as transferring the title. That is to say, a mortgage is treated as a mere security for a debt, and the legal estate can only be used for the purpose of enforcing the payment of the debt secured. The cardinal principle that governs in the construction of powers is to effectuate the intention of the donor; but we can not gather from the terms of the will any intention on the part of the testator looking to a mortgage of his estate. The will does not in express terms authorize the executors either to borrow money or to mortgage the real estate. By the terms of the will, the executors were directed to close up the estate as speedily as possible, and to pay the debts of the testator and the legacies named in the will promptly. The testator anticipated that the whole estate might be necessary to pay all the legacies and to pay his debts. There-

fore, in the last clause of his will he provided that if his estate was not sufficient to pay all the legacies after the payment of his debts, the legacies should be proportionately reduced. All this precludes the supposition that a mortgage was ever within the intention of the testator. See, *Williamson* v. *Grider, supra.* And, as we have already seen, a power of sale does not include the power to mortgage except in those States where a mortgage is characterized as a conditional sale instead of being regarded as a security for a debt.

We do not deem it necessary to decide whether or not the executors have the power to make a lease for a long term of years as it does not seem to us that it will be necessary for the executors to do this. It appears from the allegations of the complaint that before his death, Stiewel executed a lease for the term of thirty years to the Bankers Trust Company on the property at the corner of Second and Main streets in the city of Little Rock, and, of course, any sale of that property by the executors will be made subject to the rights of the lessee under the lease. It may be said, however, that the will places the control and management of the estate in the hands of the executors, and they will have power to make leases for such length of time as may be necessary until they exercise the authority to sell and dispose of the land. It follows that the decree will be reversed and the cause remanded with directions to the chancellor to enter a decree in accordance with this opinion.

KIRBY, J., did not participate.