FINCH v. HUNTER.

Opinion delivered May 9, 1921.

1.  WILLS—CONSTRUCTION.—The cardinal rule in construing a will is to ascertain and declare the intention of the testator, to be gathered from reading the entire will and construing it so as to give effect to every clause and provision therein if this can be done.

2. WILLS—CONSTRUCTION.—Where a testator, having two children, F. and H., devised certain land "to each of my children and H.," and devised the rest of his lands to his wife for life with remainder to H., the first devise is to the two children, the words "and H." being used in the sense of "including H.," to indicate that H. was included in the words, "to each of my children."

3. WILLS—GRANDCHILDREN.—Grandchildren are not included in a gift to the testator's children, in the absence of words in the contract to indicate such intention.

Appeal from Sebastian Chancery Court, Greenwood District; *J. V. Bourland,* Chancellor; reversed.

STATEMENT OF FACTS.

Mrs. H. C. Finch brought this suit in equity against her sister, Emmer Lee Hunter, for the partition of certain real estate to which she claims an undivided one-half interest under the will of their deceased father.

A. J. Hunter owned the lands in controversy in his lifetime and himself wrote the will which is the basis of this lawsuit. A. J. Hunter died in July, 1919, leaving surviving him his widow, Mrs. A. J. Hunter, two children, the plaintiff, Mrs. H. C. Finch, and the defendant, Emmer Lee Hunter, and two grandchildren, Loyd Gilliam, and Earl Gilliam, the sons of a deceased daughter. A. J. Hunter was married four times, and the plaintiff, the defendant, and the deceased daughter were all children of different mothers. His widow had no children.

The will was duly signed and attested and the body of it is as follows:

*"Know all men by these presents,* that I, A. J. Hunter, of Lavaca, in the county of Sebastian and State of Arkansas, of sound and disposing mind and memory, do make and publish this, my last will and testament, hereby revoking all former wills by me at any time heretofore made.

"1. I hereby constitute and appoint J. B. Branch to be the sole executor of my last will, directing my executor to pay all my just debts and funeral expenses and the legacies hereinafter given, out of my estate.

"2. After the payment of my said debts and funeral expenses, I give to each of my children, and Emmer Lee Hunter, what is known as the Horse Shoe Bend west of Big Creek, towit: (SE) southeast of the (SE) southeast quarter of section (18) eighteen, township (8) eight, north of range (29) twenty-nine west, containing nine acres, more or less.

"And northeast part of southeast (SE) of southeast (SE) section (13) thirteen, township (8) eight, range (30) thirty, eleven acres and eighty-five one-hundredths and the north part of southwest, section (13), township (8), range (29), containing six acres, lying west of Doctor Fork, making Doctor Fork and Big Creek line, containing in all twenty-seven acres, more or less.

"And after payment of all my just debts I give devise to my said wife, during her natural life or long as she remains my widow, all the balance of my real estate, and after her decease or marriage to go to my daughter, Emmer Lee Hunter.

"I give and bequest to my grandson, Loyd Gilliam, five dollars to be paid within twelve months after my decease; I give and bequest to my grandson, Earl Gilliam, five dollars to be paid within twelve months after my decease.

"I give and bequest to my daughter, Willie Finch, five dollars to be paid within twelve months after my decease.

"In testimony whereof, I hereunto set my hand, and publish and declare this to be my last will and testament, in the presence the witnesses named below, this 24th day of April, A. D. 1918."

The contest in this case is over the twenty-seven-acre tract in the second clause of the will.

The chancellor found in favor of the defendant, and the plaintiff has appealed.

*Pryor & Miles*, for appellant.

The intention of the testator in the construction of a will must be gathered from its language used when

unambiguous and not from oral testimony. There is no
ambiguity here; it clearly gave to the two children the 27
acres of land and the balance of the real estate to the
daughter, Emmer Lee Hunter. 68 Ark. 369; 116 *Id.* 328.

The appellee, Emmer Lee Hunter, *pro se.*

A clerical mistake in a will may be corrected to effect
the manifest intention of the testator as collected from
the context of the will. 22 Ark. 567. Where two parts
of a will are irreconcilable the latter clause prevails. *Ib.*

A testator is presumed to have used the word "chil-
dren" in a will in its ordinary and strict meaning, un-
less the contrary is plainly shown. 105 Ark. 618. The
testator's intent should be carried out as ascertained in
view of all the provisions of the will. 98 S. W. 1167.
Considering the will altogether, there is no prejudicial
error, as the evidence sustains the finding.

HART, J. (after stating the facts). It is the conten-
tion of the plaintiff that the language of the will gives
the Horse Shoe Bend land, consisting of twenty-seven
acres, equally to the plaintiff and to the defendant, and
such was the contention made by the plaintiff before the
chancellor:

The chancellor was of the opinion that, if he had in-
tended to divide this place between the plaintiff and de-
fendant in equal parts, the testator would have used lan-
guage as follows: "To my children, Willie Finch and
Emmer Lee Hunter." The chancellor was of the opin-
ion that it was the intention of the testator to give all of
his land to Emmer Lee Hunter, but to charge a certain
portion of it with a life estate in favor of his widow.

It is insisted that this contention is borne out by the
facts that the testator gave a specific legacy of $5 to
Willie Finch, thus evincing an intention to give her this
sum and no more.

On the other hand, it is insisted that the use of the
words, "I give to each of my children and Emmer Lee
Hunter, what is known as the Horse Shoe Bend" place,

shows that the testator intended his two daughters to share in this place equally.

The cardinal rule in construing a will is to ascertain and declare the intention of the testator. That intention is to be gathered from reading the entire will and construing it so as to give effect to every clause and provision therein if this can be done. *Union & Mercantile Trust Co.* v. *Hudson*, 143 Ark. 519, and *Heiseman* v. *Lowenstein*, 113 Ark. 404. The language used is, "I give to each of my children and Emmer Lee Hunter, what is known as the Horse Shoe Bend" place. The word "and," it is true, is generally used in a conjunctive sense, but such is not always the case. The word "and," as used in the clause quoted above, rather expresses the relation of addition and means "including" or "together with." The word "and" has no synonym; but the Century Dectionary says that it is approximately expressed by "with, along with, together with, besides, also, moreover."

We think the word is used in this sense in the clause referred to. The testator used it to indicate a connection of what follows with what has gone before in the way of description. In other words, the testator meant to say that he gave to each of his children, together with Emmer Lee Hunter, or including Emmer Lee Hunter, the Horse Shoe Bend place. In this way only can effect be given to every clause in the will. In the construction placed upon the clause by the chancellor the words, "each of my children and," are merely surplusage. It was not necessary to use the words, "and Emmer Lee Hunter," but these words were probably used by the testator to emphasize the fact that he wanted Emmer Lee Hunter to share with his other daughter in the Horse Shoe Bend place. He knew that he was going to leave the rest of this land to her after charging it with a life estate in favor of his widow, and might have feared that on this account she would be left out of a share in the Horse Shoe Bend place. For this reason he probably added the words, "and Emmer Lee Hunter," to indicate that

she was included in the words, "to each of my children."
So that the testator meant to say, I give to each of my
children along with Emmer Lee Hunter what is known
as the Horse Shoe Bend place.

It is not claimed by the grandsons that the word
"children" in the clause just referred to includes them,
and it may be said in this connection that a gift to the
children of a person means one's immediate offspring
and does not extend to grandchildren. Alexander on
Wills, vol. 2, § 841; Schouler on Wills, Executors and
Administrators (5 ed.), vol. 1, § 533, and 40 Cyc. 1451.

Of course, this rule is merely presumptive and would
yield to a contrary intention as gathered from the con-
text. There are no words in the context, however, to
indicate that the word "children" is used in other than
its ordinary and natural meaning. The testator left a
bequest to each of his grandchildren and specifically des-
ignated them as his grandsons.

Therefore, we are of the opinion that the chancellor
erred in not decreeing a partition of the Horse Shoe
Bend place between the plaintiff and the defendant, and
for that error the decree will be reversed and the cause
remanded for further proceedings not inconsistent with
this opinion.