LAYMAN v. HODNETT.

4-6986                                   168 S. W. 2d 819

Opinion delivered February 22, 1943.

368

*R. L. Searcy, Jr.,* for appellant.

*Cockrill, Armistead & Rector,* for appellee.

ROBINS, J. By complaint filed in the lower court the appellee, William E. Hodnett, executor and trustee under the last will and testament of Joseph Hodnett, deceased, who was a resident of Illinois at the time of his death, asked for a construction of this will, as to the powers of the appellee thereunder: (1) to execute oil and gas leases upon certain lands in Lafayette county, Arkansas, owned by the testator at the time of his death, (2) to execute conveyances of minerals in and under said lands, (3) to execute deeds of conveyance covering said lands containing reservations of minerals thereunder, and (4) to sell and assign royalties payable under any oil and gas leases covering said lands; and the appellee also prayed that his action in executing certain oil and gas leases and conveyances of minerals and assignments of royalties upon these lands be approved by the court. All the living beneficiaries under the will of Joseph Hodnett were made parties defendant, and, as they were nonresidents of the state, service was properly had upon them by warning order, and a guardian *ad litem* was appointed for the minor defendants, Mary Layman, John W. Savage and Joseph H. Savage, who are grandchildren of the testator. All of the adult defendants entered their appearance, and the guardian *ad litem* filed an answer denying the allegations of the complaint. By the decree of the lower court it was found that the trustee had power under the will to sell and convey the minerals, including oil and gas, under the lands belonging to the trust estate, to convey said lands, reserving the minerals thereunder, to execute oil and gas leases, and to sell and assign the royalties and rentals

payable under such leases; and the court also ratified and approved the oil and gas leases and conveyances of interests in oil and gas produced under various portions of the lands owned by the testator, which had been theretofore executed by the trustee. The guardian *ad litem* for the minor defendants has appealed from this decree, but no appeal therefrom is prosecuted by any of the adult defendants.

The rule is well settled in this state that a court of equity has power and jurisdiction to construe a will where such will creates a trust. *Davis* v. *Whittaker,* 38 Ark. 435; *Williamson* v. *Grider,* 97 Ark. 588, 135 S. W. 361; *Heiseman* v. *Lowenstein,* 113 Ark. 404, 169 S. W. 224; *Phillips* v. *Phillips,* 143 Ark. 240, 220 S. W. 52; *LeFlore* v. *Handlin,* 153 Ark. 421, 240 S. W. 712; *Gaines* v. *Arkansas National Bank,* 170 Ark. 679, 280 S. W. 993. Jurisdiction of the chancery court of the county in which the lands involved in the trust are situated is not affected by the fact that the owner thereof was a resident of another state, and that the estate is being administered under the direction of the court having probate jurisdiction at the domicile of the decedent. While the courts of some states hold otherwise, it is well settled in this state that the law of the situs of the real property controls the construction of wills by which same is devised. In Arkansas law of Conflict of Laws, by Leflar, § 157, the rule is thus stated: "The Arkansas decisions have consistently followed the view that the law of the situs governs the effect and interpretation of wills of land. The problem has arisen three times in connection with wills made by Tennessee domiciliaries devising Arkansas lands, and each time Arkansas law has been deemed controlling. The strongest holding was in *Bowen* v. *Frank,* in which a Tennessee judicial decision interpreting the very will in question was held to be irrelevant. The Arkansas court said (at 179 Ark. 1010): 'The decisions of the Supreme Court of Tennessee, where the testator resided at his death, construing his will disposing of lands there and in this state, are without authority, of course, for the disposition of the lands here, and are not to be regarded, unless in harmony with the rules of con-

struction for wills disposing of property in this state as applied by our own court.' The Arkansas position as to wills of land could scarcely have been made clearer. Where wills of movables are concerned, there is not so much divergence of view in the authorities. It is generally agreed that the law of the testator's domicile governs. . . .'' By the will under consideration here Joseph Hodnett, after making certain specific bequests, devised and bequeathed to his son, the appellee, all of his property, both real, personal, and mixed, as trustee for the widow, children and grandchildren of the testator. By this will it was provided that the trustee was ''to have and to hold all my real estate of which I may die seized, wheresoever the same may be located, in trust, to rent the same upon such terms as my said trustee may deem advantageous to my trust estate, collect the rents and profits therefrom, . . .'' and it was further recited in said will that: ''My said trustee or his successor shall have and is hereby given full power and authority, without any order or decree of any court, to sell all or any part of the real estate belonging to said trust estate at any time, at either public or private sale, upon such terms as he may deem advantageous to said trust estate and I hereby expressly authorize and empower my said trustee or his successor to make, execute, acknowledge and deliver proper deeds of conveyance to the real estate so sold, conveying the fee simple title thereto, to the grantee or grantees of said deeds and that the purchaser or purchasers of said real estate shall not be required to look to the application of said purchase money by said trustee.'' In the interpretation of a will the rule is that ''the intention of the testator must be gathered from all parts of the will, and such construction be given as best comports with the purposes and objects of the testator. . . .'' *Parker* v. *Wilson*, 98 Ark. 553, 136 S. W. 981. The appellant cites the decision of this court in the case of *Heiseman* v. *Lowenstein*, 113 Ark. 404, 169 S. W. 224, in which it was held that the power in a will authorizing a trustee to sell the land did not include the power to mortgage same, and argues that, by analogy, it should be held that a power to sell land would not

include a power to execute an oil and gas lease covering the land. That case is not controlling here. The difference between the effect of the mortgaging of real estate by a trustee and of the leasing of same for the purpose of taking therefrom gas and oil for the benefit of the trust estate is so plain as not to require any elaborate discussion. The power to mortgage connotes the power to create or continue an indebtedness that, by reason of interest charges, might deplete or finally destroy the trust estate, while the execution of an oil and gas lease not only would not deplete the trust estate, but it might be absolutely necessary, under some circumstances, in order to conserve the trust estate; and where the execution of such a lease resulted in the discovery of oil or gas in paying quantities under the lands of the decedent the trust estate would be definitely enhanced thereby.

So far as we have been able to discover, the precise question involved in this case has not been passed upon by this court, but it was held in the case of *Standard Oil Company of Louisiana* v. *Oil Well Salvage Company*, 170 Ark. 729, 281 S. W. 360, that, by an oil and gas lease such as is under consideration here, an interest and easement in the land itself is conveyed. In the case of *Clark* v. *Dennis*, 172 Ark. 1096, 291 S. W. 807, it was declared that an action to enforce a vendor's lien for the purchase price of an oil and gas lease was a real action and must be brought in the county where the land is situated.

The Supreme Court of Illinois held in the case of *Ohio Oil Company* v. *Daughetee*, 240 Ill. 361, 88 N. E. 818, 36 L. R. A., N. S., 1108, that a testamentary trustee, who was authorized to rent and lease certain real estate, but who was not authorized to sell any part of it, did not have the power to execute an oil and gas lease, because the oil was a part of the realty, and the grant of the right to remove same was in effect a sale of a portion of the land.

Hodnett, in his will, expressly empowered his trustee "to sell all or any part of the real estate," and, since minerals underlying land constitute a part of the real

estate, and the execution of a lease for the purpose of exploring the land for minerals and for the removal thereof by the lessee is in effect a conveyance of part of the land, we conclude that the appellee was authorized and empowered to execute oil and gas leases covering any or all of the lands owned by his testator on such terms as he might deem proper, and to make disposition of the rentals and royalties arising therefrom.

It is a matter of common knowledge that it frequently becomes necessary for the owners of land to procure the drilling of wells on their land in order to prevent drainage of valuable oil therefrom by wells located on adjacent lands. Our Legislature has recognized this necessity and has authorized guardians of minors and insane persons to lease, under certain conditions, the lands held by them in their fiduciary capacity for the purpose of having oil and gas wells drilled thereon. Sections 6264, 6265, 6266, 6280 and 6281 of Pope's Digest. In an act amending these sections (act 143, approved February 25, 1939) it was recited that this power of the guardians was necessary in order to prevent loss to their wards. Under Hodnett's will all of his land was devised to the appellee as trustee, and all management and control thereof was taken away from the testator's widow and family. We can find no reason, either in the language of the will, or in any of the circumstances surrounding the matter, to justify a construction of the will that would deprive Hodnett's estate of the manifest benefits to be derived from having this land explored for the production of oil and gas, and having the minerals suitably and in due time removed therefrom, under proper leases executed by the trustee.

The decree of the lower court was in all things correct, and is affirmed.