Sharlett CRAIG, Personal Representative of the Estate of
Earle L. Berrell, *Deceased*, and Erika Arndt *v.*
Bonita Berrell CARRIGO and Edward James Berrell

01-1408 121 S.W.3d 154

Supreme Court of Arkansas
Opinion delivered June 26, 2003

*William F. Sherman,* for appellants.

*Ann C. Donovan,* for appellees.

W H. "DUB" ARNOLD, Chief Justice. Appellants
• Sharlett Craig, personal representative of the estate of
Earle L. Berrell, and Erika Arndt have appealed the order of the
Pulaski County Circuit Court determining that the decedent's
children, Appellees Bonita Berrell Carrigo and Edward James Ber-
rell, are pretermitted heirs of the estate and thus entitled to inherit
the real property located in Pulaski County. This is the second
appeal of this matter to this court. *See Craig v. Carrigo,* 340 Ark.
624, 12 S.W.3d 229 (2000). Our jurisdiction is thus pursuant to
Ark. Sup. Ct. R. 1-2(a)(7). For reversal, Appellants argue that the
trial court erred by: (1) applying Arkansas law to the decedent's
will; (2) ruling that Appellant Arndt was not the common-law
wife of the decedent; (3) refusing to give effect to the expressed
intent of the testator over the law regarding pretermitted children;
and (4) granting attorney's fees and costs to Appellees to be paid
from the estate. We affirm on the first three points, and we dis-
miss on the fourth point.

The record reflects that the decedent, Earle Berrell, and
Appellant Arndt began living together in Alberta, Canada, in
1992. At the time, both Berrell and Arndt were married to other
people. Arndt's marriage to Uwe Arndt was dissolved on May 28,
1994, and Berrell's marriage to Margaret Berrell was dissolved on
January 7, 1996. Prior to their divorces, on February 4, 1994,
Berrell executed a holographic will that left all of his property, real
and personal, including that located in Arkansas, to Arndt. The
will did not mention Berrell's two children from previous mar-
riages. Berrell died on October 20, 1997.

A few months after his death, Arndt initiated probate pro-
ceedings in Alberta, Canada. In April 1998, she also initiated an
ancillary probate proceeding in Pulaski County. The first applica-

tion for ancillary probate omitted the fact that Berrell had two children. Instead, it reflected that there were no children and that Arndt was Berrell's common-law wife and the only beneficiary. An amended application, however, reflected that the decedent had an adopted son, Appellee Berrell, and that there was a possible missing adult female child, Appellee Carrigo. Both applications asked that Arndt be appointed as personal representative of the Arkansas estate.

The pleadings reflect that the decedent's property in Arkansas consisted of an escrow account, managed by Appellant Sharlett Craig, a certificate of deposit, and real property located at 24 Coolwood Drive in Little Rock. The total value of the Arkansas property, as reflected in the amended application, was approximately $64,000.

The trial court entered an order directing issuance of ancillary letters, but denied appointment of Arndt as personal representative. The trial court believed that the Arkansas estate should be represented by an Arkansas resident. As a result, Appellant Craig was appointed to be the personal representative.

After receiving notice of the Arkansas probate proceeding, Appellees hired separate counsel and contested the holographic will to the extent that it omitted any mention of them. They asserted that they were entitled to inherit the real property, on the ground that they were pretermitted children, as provided in Ark. Code. Ann. § 28-39-407(b) (1987).

In December 1998, Appellant Craig filed a motion for determination of heirship and legal interests in the Arkansas estate. Thereafter, the parties submitted briefs and exhibits in support of their positions, and several hearings were conducted. In a letter order dated May 31, 2001, the trial court determined that because the will failed to mention Appellees, the decedent's children, they were entitled to inherit the Arkansas real property as pretermitted children. The trial court also found that Arndt was the common-law spouse of the decedent and was thus entitled to a dower interest in the real property. Finally, the trial court found that Arndt was entitled to the Arkansas personal property.

Approximately one week after the trial court issued its letter order, counsel for Appellees filed an objection to the court's finding that Arndt was the common-law wife of the decedent. Counsel's letter reflects in part:

> I have a problem with one paragraph in your letter opinion about the stipulated facts and would only like to point out that while those facts were stipulated to, other facts stipulated to were that the "State" of Alberta does not recognize common law marriages (as enumerated in many of the trial briefs) and that the pension award was based solely on federal law and not on an individual state's (Alberta's) recognition of common law marriage.

Following receipt of counsel's objection, the trial court set the matter for a hearing. Thereafter, on September 10, 2001, the trial court entered an order finding that there was insufficient proof to demonstrate that Arndt was Berrell's common-law spouse. Based on this finding, the trial court determined that Arndt had no dower interest in the Arkansas real property. Appellants filed a timely notice of appeal of that order on October 5, 2001.

Also in September 2001, Appellees' counsel filed a motion for attorney's fees and costs to be awarded from the estate. Appellants objected on the ground that the trial court lacked jurisdiction to award any fees because an appeal was pending. Appellants also argued that there was no legal basis to grant attorney's fees from the estate to pay for counsel hired by some of the heirs. Following a hearing on the issue, the trial court granted the motion. An order awarding Appellees' attorney's fees of $9,200 and costs of $800 was entered on March 14, 2002. An amended fee order was entered on April 15, 2002. The record does not contain a notice of appeal from either fee order.

■ As an initial matter, we note our well-settled standard of review of probate cases. This court reviews probate proceedings *de novo* on the record, but it will not reverse the decision of the trial court unless it is clearly erroneous. *Holmes v. McClendon*, 349 Ark. 162, 76 S.W.3d 836 (2002); *Craig*, 340 Ark. 624, 12 S.W.3d 229. In conducting its review, this court gives due regard to the opportunity and superior position of the trial judge to

determine the credibility of the witnesses. *Holmes*, 349 Ark. 162, 76 S.W.3d 836.

### I. Applicable Law for Interpreting Canadian Will

For their first point for reversal, Appellants argue that the trial court erred in refusing to apply the law of Alberta, Canada, in interpreting the will. They contend that because the will was validly executed under the laws of the foreign jurisdiction, it is not subject to the Arkansas law pertaining to pretermitted children. They contend further that the trial court should have given strict interpretation to the will, which left all real and personal property to Arndt, because this was an ancillary probate proceeding. Thus, they contend that the law of the decedent's domicile should have been applied. Before discussing this issue, we note that this appeal only concerns the real property; there is no dispute concerning the trial court's award of the personal property to Arndt.

The great weight of authority in this country "holds that the law of situs governs the interpretation and effect of a will of realty." Luther L. McDougal et al., *American Conflicts Law* § 184, at 659 (5th ed. 2001). Similarly, the *Restatement (Second) of Conflict of Laws* § 240 (1971) provides:

> (1) A will insofar as it devises an interest in land is construed in accordance with the rules of construction of the state designated for this purpose in the will.
>
> (2) *In the absence of such a designation, the will is construed in accordance with the rules of construction that would be applied by the courts of the situs.* [Emphasis added.]

Arkansas law has long subscribed to the principle that the law of the situs governs the construction of wills devising real property. *See Bank of Oak Grove v. Wilmot State Bank*, 279 Ark. 107, 648 S.W.2d 802 (1983); *Layman v. Hodnett*, 205 Ark. 367, 168 S.W.2d 819 (1943); *Bowen v. Frank*, 179 Ark. 1004, 18 S.W.2d 1037 (1929); *Crossett Lumber Co. v. Files*, 104 Ark. 600, 149 S.W. 908 (1912). In *Layman*, this court held that "[w]hile the courts of some states hold otherwise, it is well settled in this state that the law of the situs of the real property controls the construction of wills by which same is devised." 205 Ark. at 369, 168 S.W.2d at

820. To support this holding, the *Layman* court quoted with approval Professor Leflar's words: "The Arkansas decisions have consistently followed the view that the law of the situs governs the effect and interpretation of wills of land." *Id.* (quoting Robert A. Leflar, *Arkansas Law of Conflict of Laws* § 157).

■ Appellants concede that, generally, the law of the situs controls the effect and interpretation of wills of land. However, they assert that there are two statutory provisions in our Probate Code that may require a different result based on the facts of this case. The first statute is Ark. Code Ann. § 28-25-105 (1987), which provides:

> A will executed outside this state in a manner prescribed by §§ 28-25-101 — 28-25-104 or a written will executed outside this state in a manner prescribed by the law of the place of its execution or by the law of the testator's domicile at the time of its execution shall have the same force and effect in this state *as if executed in this state* in compliance with the provisions of §§ 28-25-101 — 28-25-104. [Emphasis added.]

It is unclear how this section supports their position that a will validly executed in accordance with the laws of a foreign jurisdiction should be interpreted under the laws of that jurisdiction. The plain language of the statute dictates otherwise, by providing that validly executed foreign wills "shall have the same force and effect in this state as if executed in this state[.]" This language merely puts foreign wills on the same level as Arkansas wills. Arkansas wills are subject to the statute pertaining to pretermitted children, section 28-39-407(b). Thus, under section 28-25-105, the holographic will executed in Alberta, Canada, is also subject to the pretermitted-children provision. This interpretation is supported by this court's holding in *Crossett Lumber Co.*, 104 Ark. 600, 149 S.W. 908.

In *Crossett*, this court interpreted §§ 8049-50 of *Kirby's Digest* (1904), which were the precursors to section 28-25-105. Those sections provided:

> Sec. 8049. Citizens of the United States, or territories thereof, owning real or personal property in this state may devise and bequeath the same by last will and testament, executed and

proved according to the laws of this state, or any state or territory in which the will may be made (y).

Sec. 8050. Copies of such wills shall be recorded in the same manner as wills executed and proven in this state, *and shall be admitted in evidence in the same manner.*[1] [Emphasis added.]

This court held that it was "never intended" by those statutes that a foreign will "even though made under the same formalities required by our laws, should have the effect to dispose of lands in this State contrary and opposite to the policy of our law as plainly expressed in the statute." *Crossett Lumber Co.*, 104 Ark. at 603, 149 S.W. at 910. This court went on to explain:

> [W]e do not think the execution and probate of a will in such foreign jurisdiction that omits to mention the name of the testator's only child can have the effect under this statute, though it was executed and probated in accordance with the laws of the testator's domicile, to transmit real estate situated within this State to the devisee therein *when under the statute such a will, if made here, would be without effect to do so. It was evidently not the intention of the Legislature to give more and a different effect to a will so executed in a foreign jurisdiction than it would have if made under the laws of our own State by a citizen thereof*[.]

*Id.* at 603-04, 149 S.W. at 910 (emphasis added). This holding does not support Appellants' argument that a foreign will devising land in Arkansas should be interpreted in accordance with the laws of the foreign jurisdiction.

Nor is there any support for Appellants' position that because this proceeding was ancillary, the trial court should have applied the law of the domiciliary, even to the devise of real property situated in Arkansas. They rely on the statutes pertaining to ancillary probate proceedings, codified at Ark. Code Ann. §§ 28-42-101 to -111 (1987). These provisions, however, are not helpful to Appel-

---

[1] Sections 8049-50 of *Kirby's Digest* were later codified as §§ 10539-40 of *Crawford & Moses's Digest* of 1919, and then later codified as §§ 14557-58 of *Pope's Digest* of 1937. The substance of these statutes were later encompassed by Act 140 of 1949, later codified as Ark. Stat. Ann. § 60-405. It was Act 140, which created our current Probate Code, that added the provision that a will is valid if it was executed according to the law of the testator's domicile.

lants' position. To the contrary, section 28-42-101 specifically provides:

> Except where special provision is made otherwise, the law and procedure relating to the administration of estates of resident decedents shall apply to the ancillary administration of estates of nonresident decedents.

Thus, the applicable law is the same, regardless of whether the probate proceeding pertains to a will executed in Arkansas or in a foreign jurisdiction.

■ In sum, Arkansas law has consistently followed the rule that the law of the situs of real property governs the effect and interpretation of wills purporting to devise such land. Thus, any will, regardless of where it was executed or where the testator resided at the time of his or her death, that purports to devise real property located in this state will be interpreted and construed under the laws of this state. Sections 28-25-105 and 28-42-101 do not require a contrary result.

■ Arkansas law provides that when a will fails to mention or provide for a child, that omission operates in favor of the pretermitted child. *See* section 28-39-407(b). It is undisputed that the will in this case omitted any mention of the decedent's two children. Accordingly, under Arkansas law, the children were entitled to inherit the real property as if the decedent had died intestate. We thus affirm the trial court's ruling on this issue.

## II. Common-Law Marriage

For their second point for reversal, Appellants argue that the trial court erred in refusing to recognize Arndt's status as the common-law spouse of the decedent. Appellants contend that were she recognized as such, she would have been entitled to a dower interest in the Arkansas real property.

■ ■ Arkansas Code Annotated § 9-11-107(a) (Repl. 2002) provides: "All marriages contracted outside this state which would be valid by the laws of the state or country in which the marriages were consummated and in which the parties then actually resided shall be valid in all the courts in this state." Similarly, this

court's case law has recognized that while common-law marriages may not be created by law in Arkansas, our courts will recognize marriages contracted by law in other states. *See Brissett v. Sykes*, 313 Ark. 515, 855 S.W.2d 330 (1993); *Allen v. Wallis*, 279 Ark. 149, 650 S.W.2d 225 (1983). A person seeking to prove the creation of a common-law marriage in another state or country must do so by a preponderance of the evidence. *Id.* Part of this proof includes the requirements for establishing a common-law marriage in that jurisdiction. *Brissett*, 313 Ark. 515, 855 S.W.2d 330.

Initially, the trial court declared Arndt to be the common-law spouse of the decedent. The court's letter order reflected that the determination was based on the stipulated facts that Arndt was listed in certified documents in the Surrogate Court of Alberta, Canada, as the common-law spouse, and that she was receiving a pension from the Canadian national government, based on the decedent's earnings.

Following Appellees' objection to this finding, the trial judge set another hearing on the issue, wherein she specifically asked Appellants for proof of three things: (1) that common-law marriages are recognized in Alberta; (2) what the requirements for common-law marriages are; and (3) that Arndt met those requirements at the time of the decedent's death. Appellants conceded that there was no statutory law in Alberta that recognized common-law marriages. Nonetheless, they contended that at the time of the decedent's death, there was a "movement" in the Alberta courts to grant common-law spouses the same rights as married spouses. Appellants also pointed to the fact that Arndt had been deemed Berrell's common-law spouse under the national Canadian Pension Plan (CPP).

The earliest case relied on by Appellants is *Pauliuk v. Pauluik*, 48 Alta. L.R. 2d 25 (Q.B. 1986). Appellants apparently cite the case because it involved facts similar to those at hand, as the decedent had left the majority of his property in a will to his live-in girlfriend, to the detriment of his children. The holding of this case, however, does not support Appellants' position that Alberta courts recognize the legal status of a common-law marriage under the inheritance laws. To the contrary, this case specifically holds:

> In the present case, the residuary legatee, Lillian Heintz, was living in a common-law relationship with the deceased and would be considered to have *no legal claim against the estate apart from her status as a residuary legatee*. I believe, however, that she had a *moral claim* for some recognition·and bounty from the Testator since it appears to be agreed that she assisted the Testator in caring for him during his terminal illness.

*Id.* at 30 (emphasis added). It is clear from this language that the court recognized Ms. Heintz's claim on an equitable basis, as she cared for the decedent during his terminal illness, and not based upon any legal claim that she had as a common-law spouse. As such, this holding is not helpful to Appellants' position.

The next case Appellants cite is *Armstrong v. McLaughlin Estate*, 112 D.L.R. 4th 745 (Alta. Q.B. 1994). There, the Alberta Court of Queen's Bench determined that it had jurisdiction to define the term "spouse," as used in Alberta's Family Relief Act, to include a common-law spouse. That decision was reversed, however, by the Alberta Court of Appeal in *Armstrong v. McLaughlin Estate*, 130 D.L.R. 4th 766 (Alta. C.A. 1995). Accordingly, it was of no precedential value at the time of the decedent's death in this case.

The final case cited by Appellants is *Taylor v. Rossu*, 44 Alta. L.R. 3d 388 (Q.B. 1996), wherein the Alberta Court of Queen's Bench held that a section of Alberta's Domestic Relations Act was unconstitutional because it excluded common-law spouses from its provisions. At issue in that case was spousal support for a woman who had lived with a man for twenty-nine years. The court held that the Act should be read to encompass such common-law spouses, and it adopted the holding of a prior precedent, which provided that the definition of spouse included heterosexual couples who have cohabitated for three years or more or who have lived in a permanent relationship with a child or children. Two years later, and one year after the decedent's death, the Alberta Court of Appeal affirmed the lower court's conclusion that the Act was unconstitutional as applied to common-law spouses, but it refused to recognize the definition employed by the lower court. *See Rossu v. Taylor*, 216 A.R. 348 (Alta. C.A. 1998). Instead, the Court of Appeal suspended its declaration of unconstitutionality until the Alberta legis-

lature could remedy the situation. It further left to the legislature the task of defining the term "spouse."

Based on the foregoing precedent, we cannot say that the trial court clearly erred in ruling that Appellants had failed to prove that Arndt would be recognized as Berrell's common-law spouse under the law of Alberta, Canada. The decedent died in October 1997. At the time of his death, Alberta's statutory law did not recognize common-law marriages. Although the first *Rossu* decision was handed down prior to the decedent's death, the second was not decided until one year after his death. Thus, only the first decision, which required that such common-law spouses cohabitate for three years, unless they lived together and had a child or children, was in effect at the time of Berrell's death. Arndt cannot meet that definition, because she and Berrell did not have any children, and they had only lived together as man and wife for twenty-two months, since January 1996. Accordingly, under the relevant case law from Alberta, Appellants' proof falls short.

Appellants also rely on the fact that Arndt was recognized as Berrell's common-law spouse under the CPP and in certified court documents from the Alberta probate proceeding. This proof, too, is insufficient. In the first place, during the hearings below, the parties seemed to agree that the applicable law was that of the province of Alberta, not the national government, and they acknowledged that only some of the Canadian provinces recognized common-law marriages. The trial judge repeatedly asked both counsel for Arndt and counsel for the estate what proof there was that Alberta law recognized common-law marriages. At no time did either counsel attempt to argue that Alberta law was not controlling or that the trial court was wrong to focus on the law of the province. To the contrary, the case law offered by Appellants was from Alberta.

Furthermore, the CPP handbook introduced below reveals that its recognition of common-law spouses extends only to the pension plan itself:

> For the purpose of the CPP, a "spouse" is a person of the opposite sex with whom you are in a legal or common-law marriage.

A common-law spouse is a person of the opposite sex with whom you have been living in a conjugal (married) relationship for at least one year. [Emphasis added.]

A letter from the Canadian Human Resources Development confirms this, by stating that "Erika Arndt is considered to be the legal spouse of Earle L. Berrell in accordance with the provisions of Canada Pension Plan." Appellants did not present any proof showing that Arndt's status under the CPP would extend beyond the confines of that plan.

■ In the second place, the certified documents relied upon by Appellants that describe Arndt as the decedent's common-law wife are of no evidentiary value. They are self-serving documents completed by Arndt and her Canadian attorneys for the purpose of probating the estate in Alberta. Appellants counsel admitted during oral argument that there had been no declaration from the Alberta probate court that Arndt was recognized as Berrell's common-law wife. Moreover, the fact that these documents are certified as being true copies in no way means that the facts stated therein have been recognized or certified by the Alberta probate court. Accordingly, Appellants failed to meet their burden of proof on this issue, and we affirm the trial court's ruling.

### III. Testator's Intent

For their third point, Appellants argue that the trial court erred in failing to give effect to the expressed intent of the testator, as reflected in his will. They urge that because the decedent expressly left all of his property to Arndt, the trial court should have given effect to his intent, regardless of the pretermitted-children statute. There is no merit to this point.

■ It is well settled that the intention of the testator as expressed in the language of his or her will prevails if it is consistent with the rules of law. *Armstrong v. Butler*, 262 Ark. 31, 553 S.W.2d 453 (1977); *Lewis v. Bowlin*, 237 Ark. 947, 377 S.W.2d 608 (1964). However, pursuant to section 28-39-407(b), when a will fails to mention or provide for a child, that omission operates in favor of the pretermitted child, *without regard to the real intention of the testator*. *Alexander v. Estate of Alexander*, 351 Ark. 359, 93

S.W.3d 688 (2002); *Armstrong*, 262 Ark. 31, 553 S.W.2d 453. This court has observed:

> The purpose of this statute is not to interfere with the right of a person to dispose of his property according to his own will, but to avoid the inadvertent or unintentional omission of children (or issue of a deceased child) *unless an intent to disinherit is expressed in the will.* Thus, where the testator fails to mention children or provide for them as member of a class, it will be presumed that the omission was unintentional, *no contrary intent appearing in the will itself.*

*Robinson v. Mays*, 271 Ark. 818, 821, 610 S.W.2d 885, 887 (1981) (citation omitted) (emphasis added). Thus, unless the will itself explains the omission of the children, it will be presumed that such omission was unintentional, regardless of the testator's intent.

 Here, the decedent's will did not mention either of his children, nor did it contain any language that would show that the omission of his children was intentional. Appellants point to the language from the decedent's earlier, revoked will, which provided: "I have intentionally omitted to provide in this will for MARGARET C. BERRELL [the decedent's wife at the time], BONITA (BERRELL) AND EDWARD J. BERRELL." This language from a prior will is of no evidentiary value, however, under this court's specific holding in *Robinson*, 271 Ark. 818, 610 S.W.2d 885. Accordingly, because the will omitted any mention of the decedent's children, without explanation, the trial court was correct in ruling that Appellees were pretermitted children entitled to inherit as if the decedent had died intestate.

## IV. Attorney's Fees

For their final point, Appellants argue that the trial court erred in granting Appellees their attorney's fees and costs to be paid from the estate. They argue that the trial court lacked jurisdiction to make such an award because an appeal was pending in this court. Before we can reach the merits of this point, we must first determine whether we have jurisdiction of this issue.

The record reflects that Appellees filed a motion for attorney's fees on September 4, 2001. Hearings were held on the

motion in January and February 2002. At the conclusion of the February hearing, the trial court granted the motion, awarding Appellees $9,200 in fees plus $800 in costs. Appellants sought a stay of that order, pending resolution of the appeal on the substantive issues, but the trial court denied the motion. Appellants then applied to this court for a stay, and we remanded the matter for the trial court to grant the stay upon the posting of a *supersedeas* bond. This court's mandate was issued on February 28, 2002.

Following our mandate, on March 14, 2002, the trial court entered two orders, one granting Appellees' motion for attorney's fees and costs, and one granting a stay of the fee order upon the posting of a *supersedeas* bond in the amount of $11,000. On March 27, 2002, the trial court entered an order reflecting that the personal representative could satisfy the bond requirement by depositing the estate's certificate of deposit into the registry of the court. Thereafter, an amended fee order was entered on April 15, 2002. The record does not contain a notice of appeal, timely or otherwise, from either the initial fee order or the amended order. Rather, the record only contains the notice of appeal filed on October 5, 2001, from the order determining heirship entered on September 10, 2001.

On December 12, 2002, Appellees filed a motion in this court seeking the dismissal of that part of the appeal purporting to be from the order of attorney's fees. In that motion, Appellees argued that Appellants had failed to file a notice of appeal from the fee order and thus never perfected their appeal.

Appellants filed a response to the motion for partial dismissal on December 23, 2002. In that response, Appellants conceded that they had not filed a notice of appeal from the order of attorney's fees or the amended order. They contended, however, that they were not required to file a notice. Their response reflects in part:

> 13. There was no necessity or requirement for the Appellant to file a second notice of appeal in the same case. The designation of record included the entire record in the case, which should be construed to include the prospective activity in the lower court. The requirements for perfecting an appeal in this

case on all points raised in Appellant's Brief, which are drawn from the entire record, have been satisfied.

We initially denied the motion, because we did not have sufficient information to rule otherwise at the time. Thus, our denial was without prejudice. However, now that the case has been submitted and we have the necessary information before us, we will now address the merits of Appellees' argument. We note that even if Appellees had not raised this issue, we would be required to raise it on our own motion, because the timely filing of a notice of appeal is jurisdictional. *See Dodge v. Lee*, 350 Ark. 480, 88 S.W.3d 843 (2002); *Weems v. Garth*, 338 Ark. 437, 993 S.W.2d 926 (1999).

This court has held that where the order granting or denying attorney's fees is entered after entry of the judgment, the issue of attorney's fees is a collateral matter. *Nettleton Sch. Dist. v. Owens*, 329 Ark. 367, 948 S.W.2d 94 (1997); *Mason v. Jackson*, 323 Ark. 252, 914 S.W.2d 728 (1996). As such, the challenging party must file a notice of appeal from the fee order, and without such a notice, this court will not address any argument on the fee issue. *Id.* This is based on the well-settled law that the failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *Dodge*, 350 Ark. 480, 88 S.W.3d 843; *Harold Ives Trucking Co. v. Pro Transp., Inc.*, 341 Ark. 735, 19 S.W.3d 600 (2000) (*per curiam*). This rule applies to orders granting attorney's fees. *Id.*

Here, the order determining heirship was entered on September 10, 2001, and the order granting attorney's fees was entered on March 14, 2002. An amended fee order was entered on April 15, 2002. Under this court's case law, the issue of attorney's fees in this case was purely a collateral matter. Accordingly, in order to preserve any challenge to the issue of attorney's fees, it was incumbent upon Appellants to file a separate notice of appeal from the fee orders. There is no dispute that Appellants failed to do so. Accordingly, we must dismiss this part of the appeal.

Affirmed in part; dismissed in part.

CORBIN, J., not participating.