Charles B. GERMER, et al. *v.* MISSOURI PORTLAND CEMENT COMPANY

89-282                                                    783 S.W.2d 359

Supreme Court of Arkansas
Opinion delivered February 5, 1990

278

*Catlett, Stubblefield, Bonds & Fleming*, by: *Victor A. Fleming*, for appellants.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, by: *Joseph F. Kolb* and *Richard C. Kalkbrenner*, for appellee.

DAVID NEWBERN, Justice. This is an appeal from a decree which foreclosed a mortgage and granted a judgment on an open account against a corporate defendant. In addition, the decree enforced an agreement which guaranteed a portion of the corporation's debt. Alice Leigh owned 87 per cent of Big Rock, Inc., doing business as Criss & Shaver Readimix Concrete. Mrs. Leigh's son, Charles Germer, was president and a director of the corporation. Big Rock purchased cement from Missouri Portland Cement Company (MP). MP's credit manager testified that, in February, 1984, Big Rock owed MP some $295,000. On March 1, 1984, Leigh and Germer executed a personal guaranty for an $80,000 line of credit for Big Rock with MP. In 1986 Germer, without the knowledge of Leigh, executed a promissory note on behalf of himself and Big Rock to MP for $356,797. Mrs. Leigh died. Germer contended that the subsequent note was a significant alteration of the obligation so that neither he nor Leigh's estate remained liable on the guaranty. It was also contended that the Wingo Act should preclude MP from bringing action in an Arkansas court because MP had not qualified under the act until shortly before the trial. We agree with the chancellor's conclusion that the guaranty was not revoked. We hold that the Wingo Act

was inapplicable. The decision is affirmed.

## 1. The guaranty

■ Germer and Leigh's estate argue that it was clear error for the trial court to have accepted the testimony of MP's credit manager to the effect that the amount of the 1986 note was approximately $80,000 less than the entire indebtedness of Big Rock to MP, and thus to have accepted the notion that the note · was not intended as a "novation" or substitution for the guaranty. The argument is based on inconsistency between the testimony and a document showing the indebtedness as of August 31, 1986. The suggestion is that the credit manager lied. While we may reverse upon finding a factual determination by a chancellor was clearly erroneous, our review defers to the chancellor's evaluation of the credibility of the witnesses. *Lytle* v. *Lytle*, 301 Ark. 61, 781 S.W.2d 476 (1989), *Rose* v. *Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984).

The guarantee agreement on which the chancellor held both Germer and Leigh's estate liable provided, in part: "Guarantors, without affecting their liability hereunder in any respect, consent to and waive notice of all changes of terms, the withdrawal or extension of credit or time to pay, the release of the whole or any part of the indebtedness. . . ."

■ A material alteration in an obligation, made without the assent of the guarantor, may discharge the guarantor. *Inter-Sport* v. *Wilson*, 281 Ark. 56, 661 S.W.2d 367 (1983); *Spears* v. *El Dorado Foundry*, 242 Ark. 590, 414 S.W.2d 622 (1967). If, however, the guaranty agreement specifically provides it will not be affected by renewals or extensions of the obligation guaranteed, that provision will be honored. *Gentry* v. *1st American Nat. Bank*, 264 Ark. 796, 575 S.W.2d 152 (1979).

■ The provision in the agreement consenting to "extension of credit" without affecting liability on the guarantee is clear, and we have been given no reason to hold it is less enforceable than the provision in the *Gentry* case with respect to renewals or extensions.

280

## 2. The Wingo Act

When the obligations in question here were incurred, Ark. Stat. Ann. § 64-1202 (1947) provided, as a penalty in addition to a prescribed fine:

> any foreign corporation which shall fail or refuse to file its articles of incorporation or certificate as aforesaid, cannot make any contract in the State which can be enforced by it either in law or in equity, and the complying with the provisions of this act after the date of any such contract or after any suit is instituted thereon, shall in no way validate said contract.

The trial court found that Big Rock, Germer, and Leigh had waived the provisions of the act by their continuous course of business with MP. We find no authority for such a holding, but we conclude the result was correct for other reasons.

The penalty portion of the act, by its terms, applies only when it can be shown the foreign corporation was "doing business" in Arkansas. In addition, the registration requirement may not be enforced by applying the penalty to a transaction in interstate commerce. U.S. Const. art. I, § 8, cl. 3. *See North American Phillips Commercial Electronics Corp.* v. *Gaytri Corp.*, 291 Ark. 11, 722 S.W.2d 270 (1987). Although the testimony showed that MP had a salesman residing in Arkansas, its business was done through a terminal in Memphis, Tennessee. Big Rock either picked up the cement in Memphis or the cement was delivered to Big Rock in Arkansas from the Memphis terminal by common carrier.

While we have strong doubts whether even the threshold test of "doing business" in Arkansas was met in this case, we need not decide that question because the transactions between MP and Big Rock so clearly constituted interstate commerce. MP is a Delaware Corporation headquartered in Iowa. It sold cement to Big Rock through an account agent at its Memphis office. "A contract calling for a transaction wholly in interstate commerce is enforceable in Arkansas courts by a corporation not qualified

[under the statute] to do business in Arkansas." *Goode* v. *Universal Plastics, Inc.*, 247 Ark. 442, 445 S.W.2d 893 (1969). The "indispensable element" of importation of goods from one state into another described in *Furst* v. *Brewster*, 282 U.S. 493 (1931), is patent in this case, and the "essential character" of the transactions was interstate. *Uncle Ben's, Inc.* v. *Crowell*, 482 F. Supp. 1149 (E.D. Ark. 1980).

In *Independence County* v. *Tad Screen Advertising Co.*, 199 Ark. 205, 133 S.W.2d 1 (1939), we held that the main purpose of a contract was to screen films at an Arkansas theater. Thus the contract was intrastate despite the fact that the films were shipped into Arkansas by a foreign corporation which continued to own them. There was no sale or purchase of the films. We held that the interstate shipment of the films was only incidental to this otherwise intrastate activity. Application of the penalty provision of the act was thus not prohibited by the Commerce Clause. Here we are asked to hold that the main purpose of the transactions between MP and Big Rock was to use cement in Arkansas. The analogy might be apt but for the fact that MP did not retain title to the cement. The transactions in this case had as their main purpose the interstate sale and delivery of cement rather than the use of it by Big Rock in this state.

Affirmed.