Ted SMITH, Individually and d/b/a Shiloh Ranches, Inc.
*v.* John P. ELDER, Margaret G. Elder, Vance N. Elder,
Jean E. Elder, N. Dwight Heathman, Jr., Helen Faye
Heathman, G. Hugh Smith, Charlotte Smith, Individually
and d/b/a Washington Farm Venture, an Arkansas Limited
Partnership; John H. Adair, Jerry Hines, Marjorie Hines,
James N. Morton, Dorothy Morton, Paul K. Smith, Doris
R. Smith Individually and d/b/a Benton Farm Joint
Venture, an Arkansas Limited Partnership; and McIlroy
Bank & Trust Company

92-948                                              849 S.W.2d 513

Supreme Court of Arkansas
Opinion delivered March 22, 1993

*Davis, Cox & Wright*, by: *William Jackson Butt II* and *Tim E. Howell*, for appellant.

*Friday, Eldredge & Clark*, by: *Joe D. Bell* and *Tonia P. Jones*, for appellees.

DONALD L. CORBIN, Justice. Ted Smith, separate appellant, an attorney, was rendering tax and other personal services for plaintiffs in this case. In the fall of 1976, Mr. Smith approached plaintiffs about investing in a limited partnership he was forming. Mr. Smith advised plaintiffs they would receive tax benefits by entering into the limited partnership. On November 16, 1976, Washington Farm was formed as an Arkansas limited partnership with limited partners, John P. and Margaret G. Elder, Vance N. and Jean E. Elder, N. Dwight and Helen Faye Heathman and G. Hugh and Charlotte Smith, husbands and wives, respectively. On December 23, 1976, Benton Farm was formed as an Arkansas limited partnership with limited partners, Jerry and Marjorie Hines, Paul K. and Doris R. Smith and Harold and Geraldine Collins, husbands and wives, respectively, and John H. Adair. James N. and Dorothy Morton subsequently purchased the Collins' limited partnership interests. The general partner for both limited partnerships was Shiloh Ranches (Shiloh), separate appellant, of which Ted Smith was 1/3 owner and served as secretary-treasurer. Both limited partnerships were involved in dairy farming operations.

Pursuant to the formation of the limited partnerships, appellees signed many documents, including personal bank guaranties, some of which had blanks in the body, which they admit they did not read. Appellees were also provided with a limited partnership agreement and private placement memorandum which they concede they did not read "in any detail" prior to entering into the agreement. Each appellee did however sign a receipt and/or purchaser certification indicating the limited partnership agreement, subscription agreement and private placement memorandum (PPM) (collectively the pre-formation documents) had been received. Each appellee also signed a subscription agreement stating that the PPM had been read and understood and indicating a desire to purchase into the respective limited partnership.

The pre-formation documents detailed the risks involved and informed the potential investors that Mr. Smith was the attorney for Shiloh and for the partnership, that Mr. Smith and Shiloh would be acting in different capacities and conflicts of interest could arise. The documents also stated Shiloh was authorized to employ affiliated persons whom it deemed necessary for proper operation of the venture; Shiloh would receive rental payments for leasing equipment to the partnerships; and the partnerships would be forced to obtain loans to establish their operations for which the investors would be required to sign personal guaranties. Pursuant to the partnership agreement, Shiloh was to maintain adequate accounting records and furnish the limited partners with annual statements together with tax information.

Appellees allege that they relied on Ted Smith's representation as their personal attorney that the documents they were signing were "just formalities." They contend they were unaware of the extent of the partnership losses because, even though Ted Smith occasionally requested additional funds for maintenance, Smith failed to report the financial condition of either of the ventures for any period after the year ending December 31, 1976, despite repeated requests from appellees.

In March of 1978, the Washington Farm was sold and appellees John Elder, Vance Elder, Dwight Heathman and Harold Smith became partners in the Benton partnership, which

was doing business as Viney Grove Dairy. Also in March of 1978, Mr. Smith caused McIlroy Bank & Trust to extend credit to each partnership in the amount of $175,000. Appellees allege that in March of 1978 the personal guaranties executed by them at the formation of the partnerships were delivered by Mr. Smith to McIlroy Bank & Trust as additional security for the loans. However, George Edwards, Senior Vice-President of McIlroy, testified that the loan guaranties were in place in 1976.

Appellees allege they did not learn of the personal guaranties and the fact that they had been given to McIlroy Bank & Trust until March of 1979. On March 13, 1979, Shiloh was removed as general partner, effectively ousting Mr. Smith as well. Appellees continued to operate the dairy farm owned by the Benton Farm partnership as Illinois River Dairy.

In September of 1980, Benton Farm and eight of the appellees, John R. Elder, Vance N. Elder, John Adair, James Morton, Dwight Heathman, G. Hugh Smith, Paul Smith and Jerry F. Hines as individuals, d/b/a Illinois River Dairy filed suit against Ted Smith and Shiloh alleging misapplication of limited partnership funds. Shiloh Ranches filed a counterclaim for money allegedly due the general partner by the limited partnerships. Following defendants' motion to dismiss, Illinois River Dairy and five of the individual plaintiffs, John R. Elder, Vance N. Elder, James Morton, Dwight Heathman and G. Hugh Smith were dismissed from the suit. Ted Smith was also dismissed as an individual defendant. None of the remaining plaintiffs, John Adair, Paul Smith or Jerry F. Hines appeared for trial in August of 1983. The suit was then dismissed with prejudice as to those three plaintiffs and a judgment entered in favor of Shiloh on its counterclaim in the amount of $82,189.56. That judgment was not appealed and remains unsatisfied.

On October 1, 1982, appellees filed the lawsuit which produced this appeal. An Amended Complaint was filed October 25, 1982. In their complaint, appellees alleged Ted Smith caused Washington Farm and Benton Farm to become indebted to McIlroy Bank & Trust; Ted Smith acting as the attorney for each appellee as an individual advised appellees to sign guaranties containing blank spaces obligating them for any indebtedness incurred by Washington Farm and/or Benton Farm to McIlroy

Bank & Trust; negligently failed to advise appellees of the extent of their liability if they signed blank guaranties, which failure to advise was a breach of Ted Smith's fiduciary duty to appellees as their attorney. Appellees alleged Ted Smith breached his fiduciary duty to avoid conflicts of interest in advising plaintiffs which he violated by:

(a) Charging the plaintiffs a management fee under the guise of Shiloh Ranches, Inc., for managing Washington Farm and Benton Farm.

(b) Leasing equipment to both Washington Farm and Benton Farm, under the guise of Shiloh Ranches, Inc.

(c) Realizing an undisclosed profit on sale of assets to Washington Farm and Benton Farm, under the guise of Shiloh Ranches, Inc. or other entities affiliated with or controlled by Defendant Ted Smith.

(d) Commingling and misapplication of funds and assets of Washington Farm and Benton Farm, without a full, correct and adequate accounting to the plaintiffs of those transactions.

Appellees also alleged these actions were contrary to the duty Ted Smith owed appellees as their attorney and pursuant to the limited partnership agreements. Lastly, appellees alleged Ted Smith, under the guise of Shiloh, mismanaged the business affairs and assets of plaintiffs and failed and refused to properly account for the unauthorized and negligent acts performed.

Appellees also included McIlroy Bank & Trust (McIlroy) as a defendant alleging McIlroy knew appellees did not understand the extent of their liability as a result of signing incomplete personal guaranties and that they did not intend to incur that liability by signing the incomplete guaranties and should, therefore, be barred from recovering on the guaranties from appellees. McIlroy made an oral motion to dismiss the complaint as to McIlroy. This motion was granted by order filed January 16, 1984.

The case was transferred to equity by order filed February 2, 1984, as a result of equitable claims and defenses having been made by the parties. It was docket No. E 84-140.

Appellant Shiloh filed a counterclaim against all the appellees except, John Adair, Paul Smith, and Jerry F. Hines against whom Shiloh received judgment in the 1980 suit. The counterclaim alleged Shiloh had advanced money to the partnerships and the amount of $82,189.56 was still due. ·

In a separate action, McIlroy filed a petition for foreclosure against the partnership real estate naming Washington Farm, Benton Farm, each of the limited partners and their spouses, Shiloh, Ted Smith and Frederick S. Winn, individually and as guarantors of the Washington Farm and Benton Farm loans. Shiloh and Ted Smith filed cross-claims against the limited partners alleging waste of partnership assets following the termination of Shiloh as general partner. The limited partners cross-claimed against Shiloh and Ted Smith alleging the same causes of action in the suit resulting in this appeal. The cross-claims were dismissed with prejudice since the same claims were ready to be decided in the case reaching us on appeal. In its decree of foreclosure, the court ordered that the issue of Ted Smith's liability for payment of the judgment be consolidated with the case under docket No. E 84-140, which is before us now.

In this case, appellants Shiloh and Ted Smith also filed cross-claims against all appellees alleging misfeasance and nonfeasance in the operation of the partnership causing a wasting of partnership assets. Appellees then filed a cross-claim against appellants realleging the same causes of action contained in their complaint. The trial court found that these cross-claims and the counterclaims of Ted Smith and Shiloh were barred by laches, waiver, estoppel and clean hands.

Appellant originally appealed this decision in case No. 90-176 which we remanded for lack of a final appealable order. The case comes to us again after entry of a final appealable order.

The trial court granted appellees relief finding that Ted Smith breached his fiduciary duty to appellees as their attorney and thereby committed constructive fraud and eight separate acts of malpractice against appellees and that Shiloh breached its fiduciary duty as a partner to appellees. As to Ted Smith, the trial court determined that appellees should have judgment against Ted Smith in the amount due on the notes executed on behalf of Benton Farm and Washington Farm. As to Shiloh, the trial court

determined that appellees should have judgment against Shiloh for the amount of equipment rental charges over the amount the trial court found Shiloh was authorized to charge Benton Farm and Washington Farm. The court also determined that Ted Smith was liable to McIlroy for the balance due on the March 8, 1978, loans pursuant to a Guaranty executed by Mr. Smith in favor of McIlroy on May 11, 1976, absolutely and unconditionally guaranteeing the prompt payment of any and all indebtedness from Shiloh to McIlroy. As a separate Conclusion of Law, the trial court determined that the five (5) year statute of limitations for breach of a written contract applied.

On appeal, appellants assert ten (10) points of error. We need only address two of these points.

## STATUTE OF LIMITATIONS

The trial judge determined in Conclusion of Law No. 3 that the five (5) year statute of limitations applicable to actions for breach of a written contract applied to the partners' claims against Ted Smith and Shiloh. The judge based this determination on the finding that as an officer of Shiloh, Ted Smith was obligated to perform the duties imposed on him by the written limited partnership agreement. The court went on to say that in addition to the duties included in the written contract, Mr. Smith owed each of the limited partners, his clients, the fiduciary duty to disclose all transactions he performed and conducted as executive or manager pursuant to the written agreements. Finally, the court found that appellees' cause of action arose from Mr. Smith's failure to disclose the McIlroy loan transaction which resulted in personal liability being imposed on appellees as a result of the personal guaranties they had signed.

Mr. Smith's duty of disclosure arose from his relationship to the limited partners as their personal attorney and not from any written obligation imposed by the partnership agreements. Mr. Smith did not sign the partnership agreements other than as a representative for Shiloh. Shiloh was a partner, not Mr. Smith individually.

The trial court determined that the cause of action against Ted Smith arose on March 8, 1978, the date of the loans. No finding was made as to the date the action against Shiloh arose.

However, the latest possible date the action could have arisen would be March 13, 1979, the date Shiloh was terminated as general partner. Suit was commenced on October 1, 1982, the date of the original Complaint and not October 25, 1982, the date of the Amended Complaint as the trial court determined.

■ Although the trial court determined that the five year statute of limitations applicable to written contracts applied, the trial court did not make any findings of breach of contract. The trial court based its finding of liability against Mr. Smith completely upon the finding that Mr. Smith breached his fiduciary duty to appellees as their attorney and thereby committed malpractice. Three years is the applicable statute of limitation for breach of fiduciary duty and malpractice actions. *Goldsby* v. *Fairley*, 309 Ark. 380, 831 S.W.2d 142 (1992). The statute of limitations as to Ted Smith should therefore have been three years and appellees' action against Ted Smith, individually, is barred. As to Shiloh, three years is also the applicable statute of limitations since the only finding by the trial court as to Shiloh was breach of fiduciary duty. Therefore, appellees' action against Shiloh is also barred by the statute of limitations.

■■ However, the trial court also determined that Mr. ·Smith's filing of a cross-claim relating to the ousting of Shiloh as general partner, which occurred in 1978, revived appellees' right to file a responsive answer and cross-claim against Mr. Smith stating the same cause of action. This does not amount to a waiver of the statute of limitations as appellees contend. In *Holley* v. *Holley*, 264 Ark. 35, 568 S.W.2d 487 (1978), this court stated that the filing of a counterclaim waives objections to the court's jurisdiction, but indicated that the statute of limitations would still apply. Also, the claims asserted by Mr. Smith in this case are compulsory counterclaims. Ark. R. Civ. P. 13 (a). Assertion of a compulsory counterclaim does not act as a waiver. *Arkansas Game & Fish Comm'n* v. *Lindsey*, 292 Ark. 314, 730 S.W.2d 474 (1987).

## TED SMITH GUARANTY

In its Third Amended and Supplemental Judgment, the trial court determined that the written guaranty dated May 11, 1976, and executed by Ted Smith in favor of McIlroy absolutely and unconditionally guaranteeing the payment of any and all indebt-

edness from Shiloh to McIlroy was valid. The trial court also determined that the guaranty was in effect on March 8, 1978. On this basis, the trial court held Mr. Smith liable for the balance of debts owed to McIlroy from Shiloh remaining unpaid on the March 8, 1978, promissory note executed by Shiloh as general partner for Benton Farm and the March 8, 1978, note executed by Shiloh as general partner for Washington Farm.

Mr. Smith contends the trial court erred in finding the guaranty valid. Mr. Smith gave notice to McIlroy on March 16, 1979, that Shiloh had been removed as general partner and that Shiloh and Ted Smith wished to have no further responsibility for Benton Farm or Washington Farm. Mr. Smith contends that after he gave notice of his and Shiloh's desire to be relieved of responsibility for Benton Farm and Washington Farm, McIlroy was equitably obligated to obtain his approval before releasing any collateral or other obligers, allowing any extensions, delaying enforcement action or commingling collateral. As a result of McIlroy's failure to obtain Mr. Smith's approval before taking or failing to take these actions, Mr. Smith contends he was relieved from his obligations as guarantor.

It is the law in Arkansas that a material alteration in an obligation, made without the assent of the guarantor, may discharge the guarantor. *Germer* v. *Missouri Portland Cement Co.*, 301 Ark. 277, 279, 783 S.W.2d 359, 360 (1990). An alteration is not material unless the guarantor is placed in the position of being required to do more than his original undertaking. *Continental Ozark, Inc.* v. *Lair*, 29 Ark. App. 25, 29, 779 S.W.2d 187, 189 (1989). Provisions included in a guaranty will be honored. *Germer*, 301 Ark. 277, 279, 783 S.W.2d 359, 360.

Mr. Smith contends his agreement was materially altered because McIlroy made no effort to account for the cattle existing on the farm at the time Mr. Smith gave notice of discontinuance of the guaranty; subsequently extended additional loans to the farm for the purchase of additional cattle that were commingled with the existing cattle, making it impossible to determine which cattle secured which loan; extended the loans on several occasions without Mr. Smith's approval as guarantor; did not accelerate the loans even though the limited partnership was consistently late with its loan payments; allowed its perfected security interest to

lapse; and did not apply the proceeds from the sale of the cattle when they were finally sold to the outstanding balance of the 1978 loans.

The guaranty signed by Ted Smith provided in pertinent part:

[T]he undersigned hereby guarantee(s) absolutely and unconditionally the prompt payment when due, whether at maturity, by declaration, demand or otherwise of any and all indebtedness from [Shiloh] to [McIlroy] plus such interest as may accrue thereon, whether such indebtedness is incurred as principal, guarantor or indorser, is direct or indirect, absolute or contingent, due or to become due or whether such indebtedness is now existing or arises hereafter and in addition, the undersigned agree(s) to pay all costs of collection, legal expenses and attorney's fees paid or incurred by [McIlroy] in collecting and/or in enforcing such indebtedness and in enforcing this guaranty (all such indebtedness, interest, cost, fees and expenses being hereinafter called the "indebtedness").

*No renewal or extension of time of payment of the indebtedness, no relief or surrender of any security for the indebtedness or this guaranty,* no release of any person primarily or secondarily liable on the indebtedness (including any maker, indorser or guarantor), *no delay in enforcement of payment of the indebtedness of this guaranty and no delay or omission in exercising any right or power with respect to the indebtedness, or this guaranty, shall affect the liability of any of the undersigned hereunder.*

Each of the undersigned waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this guaranty, notice of any loans made, extensions granted, or other action taken in reliance hereon and all demands and notices of any kind in connection with this guaranty or the indebtedness.

. . . .

This guaranty shall remain in full force and binding upon the undersigned until written notice of the discontin-

uance hereof shall be received by [McIlroy], notwithstanding the death of one or more of the undersigned and until any and all indebtedness accepted before receiving notice of revocation shall have been fully paid. [Emphasis added.]

Time extensions are not material alterations if they are expressly provided for in the guaranty as they were here. *Germer*, 301 Ark. 277, 279, 783 S.W.2d 359, 360. Nor are any other terms expressly provided for in the guaranty material alterations. *Id.* We have recently held that an absolute and unconditional guaranty which contains a term providing that omission of the holder does not affect the liability of the guarantor waives any defense based on impairment of collateral. *First Nat'l Bank of Crossett* v. *Griffin*, 310 Ark. 164, 832 S.W.2d 816 (1992). The guaranty signed by Mr. Smith specifically provides that Mr. Smith shall remain liable for all indebtedness accepted before McIlroy received notice of discontinuance of the guaranty until it is fully paid. Ted Smith was not released from liability for the loans McIlroy made on March 8, 1978, by reason of Shiloh's removal as general partner. Only payment of the loans after Mr. Smith gave notice of revocation of the guaranty would discharge his liability.

Nor were any of the actions or inactions alleged by Mr. Smith sufficient to materially alter his obligations under the guaranty and release Mr. Smith from liability thereon. The guaranty is absolute and unconditional and specifically provides neither extensions of time of payment, relief or surrender of security, delay in enforcement of payment, or delay or omission in exercising any right or power with respect to the indebtedness shall affect the liability of Mr. Smith. *Griffin*, 310 Ark. 164, 832 S.W.2d 816. Therefore, the trial court properly determined Ted Smith was responsible for payment of the outstanding amount of the debt due McIlroy from Shiloh.

Affirmed in part; reversed in part.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. I disagree with the majority that the trial judge based his finding of liability solely on legal malpractice. Under his February 8, 1988 Findings of Fact

and Conclusions of Law, the judge specifically finds that Ted Smith was a shareholder and officer of Shiloh Ranches, Inc., the general partner of Benton Farms Joint Venture and Washington Farms Joint Venture. The judge then, in Conclusion of Law No. 3, determines that Smith violated a fiduciary duty owed to the limited partners *as a principal of the general partner, Shiloh.* By not disclosing all pertinent information regarding his self-dealing as a principal of the general partner and by mismanaging the partnership, all of which benefitted Shiloh and Smith personally, he breached his fiduciary duty to the limited partners and violated the partnership agreement.

We have recognized that a corporate officer owes a duty not to do an unfair or fraudulent act which will result in his private gain at the expense of the corporation. *Godwin* v. *Churchman*, 305 Ark. 520, 810 S.W.2d 34 (1991); *Taylor* v. *Terry*, 279 Ark. 97, 649 S.W.2d 392 (1983); *Raines* v. *Toney*, 228 Ark. 1170, 313 S.W.2d 802 (1958). When a corporate officer commits such an act, he breaches his fiduciary duty to the shareholders. *Id.* The same reasoning applies to a limited partnership. The general partner and the principals of that limited partnership should not benefit themselves at the expense of the limited partners in violation of the partnership agreement. That is what Smith is found to have done in the case before us.

Therefore, I believe that the trial judge was correct in concluding that a breach of fiduciary duty tied to a violation of the partnership agreement carries with it a five-year statute of limitations.

Having said that, I cannot find a provision in the subsequent judgments (as opposed to the Findings of Fact and Conclusions of Law) where the trial judge made an award against Smith based on anything other than legal malpractice. Rather, it appears that the judge specifically premised each of his judgment awards expressly on his Conclusion of Law No. 1, which dealt with Smith's malpractice, and Conclusion of Law No. 2, which concerns the breach of fiduciary duty by Shiloh Ranches, Inc. Without a judgment award related to Conclusion of Law No. 3, which I read as a conclusion that Smith breached his fiduciary duty to the limited partners as a principal of the general partner — Shiloh — and not as their attorney, there is no basis for

applying on a five-year limitations period on Smith's liability.

Accordingly, I concur in the majority decision.