ARKANSAS GAME & FISH COMMISSION *v.* Thomas E. LINDSEY, Alfred PEITZ, and C.W. ELROD

86-19                                                        730 S.W.2d 474*

Supreme Court of Arkansas
Opinion delivered June 1, 1987
[Rehearing denied July 6, 1987.]

---

* Justice Purtle's and Justice Glaze's opinions can be found at 733 S.W.2d 723.

316

*Howell, Price, Trice, Basham & Hope, P.A.*, by: *Carey E. Basham* and *Dale Price*; and *P. Douglas Mays*, Arkansas Game & Fish Commission, for appellant.

*Richard B. Adkisson*, for appellee.

ROBERT H. DUDLEY, Justice. The appellees purchased two tracts of land on the shore of Lake Conway. They subdivided one of the tracts and started promoting the sale of lots. The most direct route to the subdivision is by use of a road which crosses part of the Camp Robinson Wildlife Demonstration Area which is owned by the appellant, Arkansas Game and Fish Commission. *See* Ark. Const. amend. 35, § 8. The appellant Commission claims the road as a private road and placed a barricade across it. Appellees filed suit in the Chancery Court of Faulkner County to enjoin the Commission from barricading the road. The Commission responded with an ARCP Rule 12(b)(3) motion alleging that Faulkner County was not the county of proper venue, filed an answer, filed a compulsory counterclaim seeking affirmative relief, and filed a third party complaint also seeking affirmative relief. The third party answered and issues were joined.

The applicable venue statute, Ark. Stat. Ann. § 27-602 (Repl. 1979), provides that all actions against State Boards or Commissions must be filed in Pulaski County. The trial court relied on cases which we decided before the current Rules of Civil Procedure were adopted, and held that the Commission waived the issue of improper venue when it asked affirmative relief against the appellees and against the third party defendant. *See Foster* v. *Arkansas State Highway Comm'n*, 258 Ark. 176, 527 S.W.2d 601 (1975); *Arkansas State Racing Comm'n* v. *Southland Racing Corp.*, 226 Ark. 995, 295 S.W.2d 617 (1956). The

appellant Commission argues that the trial court erred in refusing to dismiss appellees' complaint because of improper venue. We affirm the result reached by the trial court on this issue.

██ Prior to our adoption of the Rules of Civil Procedure, it was necessary for a party to make a special appearance in order to object to venue. If that party proceeded further and made a general appearance by some act, such as the filing of a permissive counterclaim, he waived the issue of venue and entered his appearance in a county other than the one designated by the venue statute. *Thompson* v. *Dunlap*, 244 Ark. 178, 424 S.W.2d 360 (1968). ARCP Rule 12(b) has abolished the distinction between special and general appearances. A defendant need no longer appear specially to attack venue. *Bituminous, Inc.* v. *Uerling*, 270 Ark. 904, 607 S.W.2d 331 (1980) and *see* Reporter's Notes to Rule 12, Note 7. Thus, the Commission did not waive venue simply by making a general appearance.

Our cases, before the current Rules of Civil Procedure, held that one who came into court and sought affirmative relief against a plaintiff by a permissive counterclaim invoked the court's jurisdiction in the case so that he could not later question the court's authority to pass on all questions between himself and his adversary. *Thompson* v. *Dunlap*, 244 Ark. 178, 424 S.W.2d 360 (1968). In *Federal Land Bank of St. Louis* v. *Gladish*, 176 Ark. 267, 2 S.W.2d 696 (1928), we explained why a demand for permissive affirmative relief enters one's appearance: "But one cannot come into court, assert a claim, ask the court for affirmative relief, and then, when there is an adverse judgment, claim that the court had no jurisdiction over his person. If this could be done, the appellant would have the opportunity and advantage of prosecuting its claim, and, in case it recovered judgment, it could collect, and at the same time take no chances of a judgment against itself."

The above cases dealt with permissive counterclaims but the case at bar deals with a compulsory counterclaim. In dealing with the doctrine of waiver, there is a significant distinction between the two types of counterclaim. Wright and Miller, in *Federal Practice and Procedure: Civil* § 1397 (1969) explain:

> Although waiver is a reasonable result when the counterclaim asserted is permissive under Rule 13(b) [the

permissive counterclaim rule], it seems improper to apply waiver when the counterclaim is compulsory under Rule 13(a) [the compulsory counterclaim rule]. By interposing a permissive counterclaim, a party voluntarily asks the court for affirmative relief and thus should not be allowed objections based on personal inconvenience. In addition, application of the waiver principle reinforces the policy against piecemeal litigation of claims that is reflected in all of the joinder of claims and multiparty litigation procedures in the rules. But waiver in the case of a compulsory counterclaim does not seem appropriate inasmuch as defendant is obliged by Rule 13(a) to assert his claim and does not have the option afforded by Rule 13(b).

Justice Newbern, in his book *Arkansas Civil Practice and Procedure* § 11-4, (1985), discusses our cases and the defendant's dilemma with a compulsory counterclaim as follows:

In deciding that a request for affirmative relief waived an objection, previously made, to improper venue, the supreme court recognized but did not answer the problem which might arise when an objection to venue is overruled and the objecting party has a claim which could be characterized as a compulsory counterclaim. *The question whether the objecting party must waive either the objection or the counterclaim under those circumstances has not been addressed.*

(Emphasis added.)

The language of the Rules of Civil Procedure is of no help on the issues. Rule 12(b), the pertinent part, provides:

(b) *How Presented.* Every defense, in law or in fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may, at the option of the pleader, be made by motion: . . . (3) improper venue, . . . . A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a

responsive pleading or motion.

■ As can be seen, the rule allows a defendant to answer to the merits in the same pleading in which he raises the issue of venue, but it does not authorize a defendant to couple a counterclaim with a venue motion. The provision "[n]o defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion" is of no assistance since it is reasonably clear that a counterclaim or third party complaint is not a "defense" within the purview of the quoted passage. D. Newbern, *Arkansas Civil Practice and Procedure* § 11-1 (1985); C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1397 (1967).

Similarly, Rule 12(h)(1) does not answer the question. It only provides that the defense of improper venue is waived if not made either by motion or in the original responsive pleading. The rule does not provide that it is exclusive of other waiver situations.

■ Since the rules do not govern the issue before us, we must look to our common law. As previously stated, we do not find any prior cases involving a compulsory counterclaim, and so, we must choose what we regard as the sounder approach. We hold that the assertion of a compulsory counterclaim does not constitute a waiver of objection to venue because of the non-voluntary character of the compulsory counterclaim. As stated in *Dragor Shipping Corp. v. Union Tank Car Co.*, 378 F.2d 241 (9th Cir. 1967):

> Under Rule 13(a) a party who fails to plead a compulsory claim against an opposing party is held to have waived such claim and is precluded by res judicata from bringing suit upon it again. . . . However, since such a party has no alternative but to submit his compulsory claim against an opposing party, or lose it, his act in asserting it does not constitute a waiver of any jurisdictional defense he previously or concurrently asserts.

Accordingly, the appellant Commission did not waive its objection to venue by filing the compulsory counterclaim.

■ However, the same reasoning does not apply to a defendant who pleads improper venue and who also files a third party complaint. By filing the third party complaint he invokes

the jurisdiction of the court, and by invoking it submits to it. *Globig* v. *Greene & Gust Co.*, 193 F. Supp. 544 (E.D. Wis. 1961); *Merz* v. *Hemmerle*, 90 F.R.D. 566 (D.C.N.Y. 1981). Clearly, one should not be allowed to assert voluntarily a claim against a third party defendant, and then, if there is an adverse judgment, claim the court was not the proper venue. Therefore, the appellant Commission waived improper venue by asserting a third party complaint. The trial court reached the correct result on this point.

The Commission next contends that the trial court erred in refusing to dismiss the case because it is a suit against the State and is prohibited by article 5, section 20 of the Constitution of Arkansas. The trial court was also correct on this ruling.

An exception to the prohibition against a suit against the State exists where the act sought to be enjoined is illegal or is causing irreparable injury. *Cammack* v. *Chalmers*, 284 Ark. 161, 680 S.W.2d 689 (1984); *Arkansas Game and Fish Comm'n* v. *Eubanks*, 256 Ark. 930, 512 S.W.2d 540 (1974). The application of the constitutional prohibition is determined by the pleadings. Here, the allegations of the complaint were that the road had been open as a public road for more than 50 years, was designated as a county road, and that the Commission was obstructing a public road which was causing appellees irreparable injury. In addition, the obstruction of a public road is illegal. Ark. Stat. Ann. § 41-2915 (Repl. 1977). The trial court correctly ruled that this case fell within the exception.

The merits of this case involve the claim by the appellant Commission that the eastern segment of the Webster's Ridge Road to Lake Conway is its private road while the appellees claim that it is a public road. It is undisputed that an old road was located near the present road, but the old road was clearly in a different location. Around the turn of the century, the old road served as the access to homes, a church, and a cemetery. It was later used as a mail route, a school bus route, and as access to a lake by hunters and fishermen. In 1940, the United States of America acquired title to all the land in the area by condemnation, but that title was subject to existing easements. In 1949, the United States quitclaimed its interest in the 4,205.8 acres to the State of Arkansas for the Commission's Camp Robinson Wildlife

Demonstration Area. In the mid-1950's, the Commission built the new segment of the road across its own land. By that time, there were no homes or churches in the area, but some hunters and fishermen began to use the new road. The Chancellor found that the old road was a "county road by operation of law" and that the new road was a "part of the county road system of Faulkner County." The ruling is in error.

County roads, as distinguished from public roads by prescriptive right, may be created in either of three ways. First, the landowners can dedicate the right-of-way to the county. *See* Ark. Stat. Ann. §§ 76-108 and 76-109 (Repl. 1981 and Supp. 1985). There was no dedication of either the old or the new rights-of-way in this case. Second, a county may condemn and pay for the right-of-way. *See* Ark. Stat. Ann. §§ 76-901 to -928 (Repl. 1981). There was no condemnation action in this case. Third, the County Judge may enter an order, after notice, declaring a mail route or a school bus route a county road. Ark. Stat. Ann. §§ 76-105 and 76-106; *Johnson* v. *Wylie*, 284 Ark. 76, 679 S.W.2d 198 (1984). No such order was ever entered, and no such proceeding can now be had because the roads no longer serve as either a school bus route or a mail route.

A former County Judge testified that he thought the county owned the road because someone, in 1975, wrote a county road number on a Faulkner County road map which was kept at the county garage. Of course, such non-judicial action by someone without statutory or common law authority, was not sufficient to transfer title to Faulkner County of either the corporeal or incorporeal hereditaments. Of course, the hunters and fishermen could not acquire a prescriptive right to the new road across state land because the limitations period for prescription does not run against the State. *Bengel* v. *City of Cotton Plant*, 219 Ark. 510, 243 S.W.2d 370 (1951). *See also* Annot. 55 A.L.R. 2d 554, 578 (1957). Therefore, neither the old road nor the new road was a county road.

The appellant next argues that "the trial court erred in finding that 'by acquiescence between Arkansas Game and Fish Commission and Faulkner County, the road in question was moved and continued as a county road.' " The argument is meritorious for three reasons. First, Faulkner County had no road

to exchange with the state; second, no state authority to convey state lands is shown; and third, there simply is no evidence of an exchange agreement. The first two reasons are self-explanatory. The only substantial evidence going to the third reason was given by Robert Pierce, a witness for the Commission, and Robert Adney, a witness for the appellee. Mr. Adney, a former employee of the Commission, testified that the new roadway evolved from a firebreak which the Commission had cut through its land. Mr. Pierce, testified that at the time he was manager of the Wildlife Area for the Commission, he caused the new road to be built with the use of a bulldozer and a roadgrader owned and operated by Commission personnel. He testified that the new road was built for recreational purposes to let hunters and fishermen use the Wildlife Management Area. There simply is no substantial evidence of Faulkner County's participation in the construction of the road or of the county's involvement in any type of exchange agreement. The only evidence involving the county is that sometime in the 1960's it began to occasionally blade the road.

Reversed.

HICKMAN, PURTLE, and GLAZE, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. I dissent because I find only one road in issue.

JOHN I. PURTLE, Justice, concurring in part and dissenting in part. I dissent from that part of the opinion which addresses the portion of the road known as "Webster's Ridge Road." There is only one road between the Saltillo Road and Green's Lake, the road in question. There is no other road that reaches the landing on Lake Conway which is known as Green's Lake. If the appellees are prevented from traveling along this road, they have in actuality lost the use of their property. It is well established that property cannot be taken without just compensation and without due process of law.

The land owned by the appellant was received through a quitclaim deed from the United States. Ownership of the land had been acquired by the United States subject to existing easements. Obviously the appellant took only such title as the United States had. Faulkner County was not a party to the condemnation suit wherein the United States gained title to the

lands in question. The United States did not receive, nor could it convey, title to the road easements through this property.

The evidence produced at trial supported the chancellor's findings that the public had acquired a prescriptive right to use the road from the Saltillo Road to Green's Lake. It is undisputed that the appellant established that part of the road which the majority designates as "Webster's Ridge Road." This newly prepared section was primarily for the benefit of the appellant and was an exchange for existing roads over the property. There was an agreement between the appellant and Faulkner County to exchange the old roads for the new one. Faulkner County thereafter treated the new route as a part of its county road system, keeping it open to the public, grading and maintaining it.

The decree in part states:

> . . . Plaintiffs are owners of the following described lands . . . access to which property is provided by means of a roadway commonly known as "Green's Lake Road", which runs from . . . the "Saltillo Road", to . . . the shoreline of Lake Conway on plaintiff's lands.
>
> . . .
>
> Prior to 1940, two roads led into the area known as the saddle, which, in fact, became and were county roads by operation of law through their usage as mail routes and school routes; service to the residents, the church, and the cemetary; and by the use of county personnel and equipment in establishing and maintaining said roads.
>
> . . .
>
> Between 1955 and 1960, Arkansas Game and Fish Commission and Faulkner County, Arkansas, relocated said prior roads into the road now known as the Ridge Road . . . Said road has thereafter been used by the general public. Faulkner County and Arkansas Game and Fish Commission have maintained said road, and said road is a public road, part of the county road system of Faulkner County, Arkansas.
>
> . . .

> Wherefore, . . . that roadway known as the "Green's Lake Road", as now located, running from its eastern terminus at its intersection with the county road known as the "Saltillo Road", . . . be and the same is hereby found and decreed to be a public road, and a part of the county road system. . . .

This Court held in *Chaney* v. *Martin*, 205 Ark. 962, 171 S.W.2d 961 (1943), that:

> We do not deem it necessary to decide whether the proof in this case justified the finding that appellee had acquired by prescription an easement along the old route used by him in crossing appellant's land. Regardless of whether appellee had acquired such right, it is shown by the evidence that appellant recognized this right to the extent that he provided for appellee a new right-of-way across his land, and the evidence further shows that appellee accepted this new route and used it for several months. Appellee thereby surrendered any prescriptive right to use the old route that he might have possessed. This exchange of routes, accompanied by surrender of the old route and acceptance and continued use of the new route by the appellee, as was shown by the evidence in this case, was effective, even in the absence of any writing to evidence the agreement.

In the more recent case of *Higgins* v. *Blankenship*, 270 Ark. 370, 605 S.W.2d 493 (1980), the Court of Appeals upheld and reaffirmed the rule in *Chaney*. The Court of Appeals in a factually similar situation held that there was an easement by agreement, rather than by prescription, and such easement could be lost only by abandonment. This Court reached the same result in *Warren* v. *Cudd*, 261 Ark. 690, 550 S.W.2d 773 (1977), and went on to hold that an oral agreement was sufficient to establish the right of a roadway. We further held that such easement, even though the result of oral agreement, was transferred by deed as an appurtenance to the land.

It does not matter whether the appellees had established an easement by use or prescription because the appellant agreed to allow the use of the new road in exchange for whatever right the appellees had in the existing roadways. The appellant had the right to grant the easement by agreement.

It is impossible to get to the appellee's property by land without going across some of the lands owned by the appellant. The majority finds that an easement along the Green's Lake portion of this road has been established by adverse use and prescriptive right because the public has traveled the road for more than seventy-five years. Since it is not possible to reach the lower end of the road without traveling across the lands in the upper part of the road, it is hard for me to understand how a right can be obtained across part of the road but not all of it.

Apparently the majority holds that the appellees have, in fact, acquired a prescriptive right across the Webster's Ridge portion of the road but not exactly in the same location as the new road. I think the exchange of location extinguished the old easement and established a new one. In any event, it appears from the record that it would be to the benefit of the appellant to maintain the new route rather than to force the appellees to re-establish the old route down Webster's Ridge. I think the exchange agreement between the appellant and Faulkner County had the effect of transferring the old prescriptive or adverse use roadway to the new location. The acceptance and use of the new route is sufficient consideration to establish the new easement.

The chancellor found that sometime between 1955 and 1958 the county and the appellant agreed to the relocation of the road to its present site. He also found that the road had thereafter been used by the general public. These findings of the trial court force me to conclude that the new location was established by agreement and that this agreement had the same effect as establishing a prescriptive easement. Therefore, the majority's reliance upon the doctrine that the statute of limitations does not run against property owned by the state is misplaced. This doctrine is simply not relevant where, as in the present case, the facts establish an easement by agreement.

The majority opinion is unique in that it grants the public the use of the distal portion of the road but denies use of the portion of the road which provides access to the "Green's Lake Road." There is no other access to this portion of the road except by the "Webster's Ridge Road." Apparently the majority means to provide access over the old routes, which were found to have been used by the public for more than seventy-five years, or perhaps the

majority intends for the appellees to resort to acquisition of a road across the Arkansas Game and Fish Commission lands pursuant to Ark. Stat. Ann. § 76-110 (Repl. 1981). In any event, it seems to me that granting the use of one section of the road and denying use of the other section is not only contrary to the facts and the law but lacks any reasonable basis.

The majority opinion fails to mention the standard of review on appeal. There is no reason revealed in the record for this Court to find that the chancellor was clearly wrong in its findings and the failure to mention the standard of review does not render the standard inapplicable. I believe that the chancellor's decision is in accordance with the overwhelming evidence presented at the trial and is not clearly erroneous.

In my opinion the chancellor should be affirmed in all respects.

TOM GLAZE, Justice, dissenting. The majority court is clearly wrong in two respects. First, it concludes erroneously that the trial judge found adverse users acquired a prescriptive right against the State to the relocated road known as Webster's Ridge Road. Second, it then applies the wrong rule of law, viz., that the statute of limitations does not run against property owned by the State.

Obviously, a person cannot hold adversely to the State, and the trial court did not, and doubtless would not, make such a holding. What the trial judge did find is as follows:

> *Prior to 1930 two roads led into the area known as the Saddle which, in fact became county roads by operation of law through their usage as mail routes school routes service to the residents, church and cemetery in the area and by the use of county personnel and equipment in establishing and maintaining such roads.* The United States of America acquired title to the land served by such roads in 1940 but, Faulkner County was not made a party to such condemnation action and the rights of the county and of the public in and to such roads were not affected. *Between 1955 and 1958 Arkansas Game and Fish Commission and Faulkner County relocated such prior roads into the road now known as the Ridge Road. Such roads*

*have thereafter been used by the general public. Faulkner County and Arkansas Game and Fish Commission have maintained said road, said road is a public road, part of the county road system of Faulkner County, Arkansas.* (Emphasis supplied.)

Consistent with the trial judge's findings above, the majority concedes that, since the early 1900's, the public traveled the entire roadway — the Green's Lake Road (western segment) and Webster's Ridge Road (eastern segment)—and had established that right-of-way by prescription. Because, however, Ridge Road, the eastern segment, was relocated sometime between 1955-1960, the majority somehow concludes the public use to that part of the public right-of-way ended. That simply is not the law. In *Chaney* v. *Martin*, 205 Ark. 962, 171 S.W.2d 961 (1943), a dispute arose concerning whether Martin had a right to use a road that crossed Chaney's property and accessed to a public highway. Martin claimed the road was an easement by prescription but the court determined whether Martin had acquired such a right to cross Chaney's land was of no moment because the evidence showed Chaney recognized this right to the extent that he provided Martin a new right-of-way across his land and that Martin accepted and used the new route. The court held the exchange of the old road or route for the new one was effective, even in absence of any writing to evidence the agreement. The situation at bar is no different except here the appellees and the public had firmly established their right-of-way by prescription. Contrary to the majority's holding, all the trial judge found here was that both roads by prescription became public easements and, while the eastern segment (Ridge Road) was relocated between 1955-1960, both the State and Faulkner County continued to maintain that eastern segment as a public road the same as it had previously been treated.

The record is abundant with evidence to support the trial judge's finding. The evidence reflects that, when the property over which these public roads ran was condemned, the government took the property, specifically subject to existing easements for public roads and highways. Appellees presented proof that this entire route to their property was used continuously, and it was recognized and maintained by the government as a public easement. For this court to hold otherwise dehors the record and

improvidently invades the province of the trial judge.

The majority became side-tracked by its discussion on county roads which juxtaposed it into position to conclude that the road in question is not a county road because the road was never dedicated or condemned as such. Thus, the majority concludes, the road was not a road which the county had authority to maintain, exchange and to hold open to the public. That issue is but a red herring since the real point in issue is whether the road was a "public easement," not a county road. As mentioned earlier, the record is replete with evidence that both the State and Faulkner County maintained and treated the entire road or easement as a public one, and both were responsible for changing, at times, the eastern portion of the road to ensure safe passage by the public.

I must also say that the majority decision leads to a rather silly holding, *viz.*, it permits appellees the use of the western half of the public easement that leads to their property, but the *only* access to it is the eastern half which the majority now limits access to, holding it no longer is a public road or easement.[1] Thus, the appellees, from their present property, have access to one-half a public road that leads east to nowhere, except the middle of a wildlife area.

Unfortunately, our court got detoured, and instead of meeting the real issue in this case, we have only complicated matters. The State's main concern is appellees' possible residential development of their private property, which is located on Green's Lake and is immediately west of and adjacent to the State's wildlife property. Except by way of the lake, the only ingress and egress to appellees' property is over the State's wildlife property. On this point, I agree with the State that any use of the public road may be that use which is compatible and consistent with the use authorized by the easement. *Massee* v. *Schiller*, 243 Ark. 572, 420 S.W.2d 839 (1967). For over seventy-five years, the roads in question provided the general public access to Green's Lake for recreation purposes. Any expanded purpose

---

[1] The trial court specifically ordered the entire road—from its eastern terminus commencing at the Saltillo Road thence northwesterly to the appellees' property—a public road.

or use of the easement simply would not be permissible.

I would affirm.