2009 Ark. App. 850

**Ricky WILLIAMS, Joey Williams, and Franklin Williams, Appellants**

v.

**Homer DAVIS, as Executor for the Estate of Ethel Davis, Deceased, and South Sheridan Water Association, Appellees.**

**No. CA 09–2.**

Court of Appeals of Arkansas.

Dec. 16, 2009.

Harrill & Sutter, PLLC, Little Rock, by: Raymond Harrill, for appellant.

J. Slocum Pickell, Pine Bluff, for appellee.

JOHN MAUZY PITTMAN, Judge.

This is the second time that this case has been before us. In *Williams v. Hall*, 98 Ark. App. 90, 250 S.W.3d 581 (2007), we reversed a judicial sale of land, which appellants Franklin Williams and Ricky Williams had inherited from their grandmother, and remanded because the sale had violated Ricky's due-process rights. Our mandate stated: "It is also ordered that appellees pay the appellants $820.20 for the costs on appeal." The appellees listed in the heading of our opinion were Randy Hall; Law Offices of Gary Green; South Sheridan Water Association; and Homer Davis, Representative of the Estate of Ethel Davis, Deceased. One brief for the appellees was filed on behalf of South Sheridan Water Association and Randy Hall.

After the remand, Franklin and Ricky moved for an interim partial distribution of the real property. They also moved for their costs that we had awarded in the first appeal, but asked that they be assessed only against the water association, because it was "the only party that op-

posed the appeal." The water association denied that it should be responsible for any part of the costs we awarded.

On May 12, 2004, appellee Homer Davis filed an inventory of the estate, which omitted two bank accounts on which Mrs. Davis and her husband had included Homer as a joint tenant with right of survivorship. On June 26, 2007, Homer filed an accounting for the estate for the period from May 12, 2004, through May 17, 2007. Appellant Joey Williams, a great-grandson and a residuary beneficiary of the decedent, filed an objection to the accounting, asserting that Homer should have included Mrs. Davis's savings and checking accounts in the assets of the estate. According to Joey, Mrs. Davis had $69,000 in the savings account and $13,000 in the checking account when she died. Joey alleged that, in a 2002 deposition, Homer admitted having used these funds to pay for Mrs. Davis's burial, along with some attorney's fees and expenses. Homer responded that the accounts did not belong to the estate.

In a July 31, 2007 hearing, the estate's attorney stated that there were no liquid assets in the estate, and that the only assets were the real property, some furnishings, an old Ford tractor, and a 1986 Chevrolet Caprice. The court said that it would first sell the personal property to pay the mandated costs, which would be borne by the estate.

In an amended objection to the accounting filed on May 12, 2008, Joey stated that another deposition of Homer had been taken, in which he said that Mrs. Davis and her husband, who had predeceased her, had placed him on their accounts; that she had kept full control of the accounts until she died; that after her death, Homer had used the funds to pay Mrs. Davis's final bills; that Homer had distributed $1000 to each of Mrs. Davis's four great-grandchildren, as provided in her will; and that Homer had also used the money for himself before closing the accounts and depositing the remaining funds in his own account. Homer responded in his individual capacity that the accounts did not belong to the estate.

Franklin and Ricky filed an amended motion for partial distribution on May 12, 2008, noting Joey's amended objection, and again asking that the costs awarded by this court be paid by the water association.

A hearing was held on September 2, 2008, at which Homer; Bernice Evans, a care giver for Mrs. Davis; and Carl McReynolds, a relative of Mrs. Davis, testified. Homer testified that Mrs. Davis did not tell him that he owned the money in the accounts; that she asked him to sign the signature cards for both accounts; that she told him that he had to pay her burial costs; and that, although she did not tell him to pay other bills, he paid her water, light, and gas bills, and her real and personal-property taxes, after she died. He said that he had used some of the money to fix his car, but he had returned it to the account; he did not admit that it belonged to the estate, but "there was at least some doubt in [his] mind."

Carl McReynolds testified that Mrs. Davis told him that she wanted Franklin and Ricky to have her money, but not until they had "straightened up," because she did not approve of their lifestyle. He stated that Mrs. Davis had arranged this with Homer: "There was some sort of an agreement that if the boys straightened out, they would get the money."

The circuit court ruled that the accounts belonged to Homer:

> Homer Davis, by the goodness of his heart tried to help out with that, tried to see that her last wishes were carried out from an account that he didn't have to spend a penny out of, according to law.

And now, we're going to jump him and criticize him and tell him that was fraud and misrepresentation and that by spending some money and trying to be a good family person that that makes a constructive trust.

The evidence is clear, cogent, convincing that this disputed account is a joint tenancy with right of survivorship. Homer Davis is the survivor. There was absolutely no fraud, misrepresentation or any inference of such in his being made a joint tenant. Thus, by operation of law, the money became his immediately upon her death and there is absolutely no evidence or basis for imposing a constructive trust on the proceeds.

Appellants filed a motion to stay the sale on September 5, 2008. On the same day, the court entered an order authorizing the sale, and Homer filed a petition for an order authorizing the estate's payment of attorney's fees.

In a letter to Franklin's and Ricky's attorney dated September 15, 2008, the court said that it would deny their motion for an interim partial distribution of the real property, stating: "Mr. Allen's letter indicates that since the estate continues in litigation, it has and will require more work of him as the estate's attorney for which he may request fees and if approved, there are no assets from which to pay should the real estate be distributed." The court entered an order on September 24, 2008, overruling the objections to the accounting; finding that the checking and savings accounts were not assets of the estate; and stating that Homer had proved by clear, cogent, and convincing evidence that they belonged to him. The court entered an order on September 29, 2008, in which it denied Franklin and Ricky's motion for partial distribution. On October 6, 2008, appellants filed a notice of appeal from the orders filed on September 5, 2008; September 24, 2008; and September 29, 2008.

Appellants raise four points on appeal. They argue that the circuit court erred in (1) ordering the estate to pay the costs awarded in our mandate, (2) ordering the sale of the tractor and automobile to pay the mandated costs, (3) denying their motion for distribution of the real estate, and (4) overruling their objections to the accounting. Because the circuit court ordered the sale and denied the motion for a partial distribution of the real property because there was no other source of funds from which to pay the mandated costs or any future expenses of the litigation, appellants' second and third points are determined by our disposition of the first and fourth points.

■ We review probate proceedings de novo, but will not reverse findings of fact of the trial court unless they are clearly erroneous. *Norwood v. Sellers*, 2009 Ark. App. 497, 328 S.W.3d 182. We review questions of law de novo. *Miller v. Cothran*, 102 Ark. App. 61, 280 S.W.3d 580 (2008).

■ Appellants argue that the estate should not be required to pay any portion of the costs awarded in our mandate because only the water association opposed the prior appeal. Although the other parties listed above appeared in the caption of our opinion, appellants urge this court to take a "realistic approach," reverse the circuit court, and direct that the costs be paid only by the water association. Appellants, however, misstate the facts. Randy Hall, through Gary Green Law Offices, also participated in the brief filed by the water association; only the estate failed to file a brief. Although the trial court erred in imposing the costs only on the estate, appellants are wrong in arguing that only the water association should pay

the costs. According to the wording of our mandate, the costs should be borne by all of the appellees.

■■■ A mandate is the official notice of the appellate court's action, directed to the court below, advising that court of the action taken by the appellate court and directing the lower court to have the appellate court's judgment duly recognized, obeyed, and executed. *Dolphin v. Wilson,* 335 Ark. 113, 983 S.W.2d 113 (1998); *Turner v. Northwest Ark. Neurosurgery Clinic, P.A.,* 91 Ark. App. 290, 210 S.W.3d 126 (2005). The "mandate rule" provides that an inferior court has no power or authority to deviate from the mandate issued by an appellate court. *Turner v. Northwest Ark. Neurosurgery Clinic, P.A., supra.* The question of whether the lower court followed the mandate is not simply one of whether the lower court was correct in its construction of the case but also involves a question of the lower court's jurisdiction. *Id.* The lower court is vested with jurisdiction only to the extent conferred by the appellate court's opinion and mandate. *Id.* If an appellate court remands with specific instructions, those instructions must be followed exactly, to ensure that the lower court's decision is in accord with that of the appellate court. *Id.* Any proceedings on remand that are contrary to the directions contained in the mandate from the appellate court may be considered null and void. *Id.* The inferior court cannot vary the appellate court's mandate; examine it for any other purpose than execution; give any other relief; review for error any matter decided on appeal; or meddle with it, other than to settle what has been remanded. *Id.* The courts have recognized some exceptions that might allow a matter to be revisited: (1) the availability of new evidence, (2) an intervening change of controlling law, and (3) the need

to correct a clear error or prevent manifest injustice. *Id.* None of these exceptions applies here.

The circuit court did not follow the express terms of our mandate. We therefore affirm in part and reverse in part as to the mandated costs, and remand with directions that the costs must be shared by all the appellees listed in the caption of the previous appeal.

■■■ Appellants further argue that the checking and savings accounts were assets of the estate; that Homer was not entitled to keep the funds in those accounts after Mrs. Davis died; and that he had an agreement to hold the funds in trust for estate purposes and for distribution to her heirs. They list Homer's actions regarding the accounts as evidence of this agreement: he paid the estate's attorney; he distributed $4000 to the great-grandchildren, according to Mrs. Davis's will; he paid funeral and burial expenses, utility bills, and taxes; and, after using $3000 to repair his car, he returned that money to the account. They also stress that Mrs. Davis exercised control of the accounts until her death.

■■■ Homer responds that, as the surviving joint tenant of the accounts, he owns them by operation of law. *See* Ark.Code Ann. §§ 23–32–207 and 23–47–204 (Repl. 2000). In the absence of fraud, he is correct. In *Hall v. Superior Federal Bank,* 303 Ark. 125, 794 S.W.2d 611 (1990), the supreme court held that Arkansas Code Annotated section 23–32–1005 [1] made the creation of a joint bank account with right of survivorship, in the absence of fraud, "conclusive evidence" of the parties' intent that the account was to pass to the survivor upon the death of the other, and that the trial court erred in considering

---

1. This statute was repealed in 1997.

other evidence of the decedent's intent. In *Gladson v. Gladson,* 304 Ark. 156, 800 S.W.2d 709 (1990), the supreme court held that a devise by a joint tenant is not effective to pass title to real or personal property held in joint tenancy because the title passes by operation of law to the survivor. The supreme court followed *Hall* in *Nichols v. Wray,* 325 Ark. 326, 925 S.W.2d 785 (1996). In *Avance v. Richards,* 331 Ark. 32, 959 S.W.2d 396 (1998), the court held that the statute did not necessarily preclude the establishment of a constructive trust on the proceeds of a joint account when a contract not to revoke a will had been properly established and the property in question had been transferred in violation of such a contract.

▨ Although the statutes do not absolutely bar the imposition of a constructive trust on the proceeds of a joint account with right of survivorship, appellants failed to present sufficient evidence to warrant such relief. A constructive trust arises in favor of someone entitled to a beneficial interest against one who secured legal title either by an intentional false oral promise to hold the title for a specified purpose, or by a violation of a confidential or fiduciary duty, is guilty of any other unconscionable conduct that amounts to a ₉constructive fraud. *Betts v. Betts,* 326 Ark. 544, 932 S.W.2d 336 (1996). The basis of the constructive trust is the unjust enrichment that would result if the person holding the property were permitted to retain it. *Id.* To impose a constructive trust, there must be full, clear, and convincing evidence leaving no doubt with respect to the necessary facts. *Nichols v. Wray, supra.* The test on appellate review is not whether the court is convinced that there is clear and convincing evidence to support the trial court's finding, but whether it can say that the trial court's finding that the disputed fact was proved

by clear and convincing evidence is clearly erroneous. *Id.* There was scant evidence that Homer made a false promise to Mrs. Davis. He agreed to pay her burial expenses, and he kept that promise. We cannot characterize Carl McReynolds's testimony about the purported agreement to give the money to Franklin and Ricky when they "straightened out" as clear and convincing.

Accordingly, we affirm as to the accounts, the order directing the sale of the tractor and automobile, and the denial of the motion for distribution of the land; affirm in part and reverse in part the order concerning the mandated costs; and remand for entry of an order in keeping with this decision.

Affirmed in part; reversed in part; and remanded.

HART and GLADWIN, JJ., agree.