2012 Ark. App. 535

**Joy Ann RICHARDSON, Appellant**

v.

**Jim BROWN, Appellee.**

**No. CA 11–1189.**

Court of Appeals of Arkansas.

Sept. 26, 2012.

Sara F. Merritt, for appellant.

James, Fink & House, P.A., Little Rock, by: Matthew R. House, for appellee.

DOUG MARTIN, Judge.

Appellant Joy Richardson appeals from the judgment of the Faulkner County Circuit Court awarding her brother, Jim Brown, $33,828.38 plus an additional $23,249.03 in attorney's fees and costs. We affirm in part and dismiss for lack of jurisdiction in part.

Patricia Brown was the mother of Richardson, Brown, and Sharon Little.[1] When Patricia died on January 7, 2008, a dispute arose among the children as to the disposition of certain property that Patricia jointly owned with her children and intended to pass outside the normal probate process. On October 1, 2009, Jim Brown filed a complaint in the Faulkner County Circuit Court alleging that he and his mother had jointly owned a 2000 Buick LeSabre,[2] but Richardson sold the vehicle two days after their mother's death without his permission and converted the proceeds to her own benefit.

Richardson answered and counterclaimed, asserting that, as executrix of their mother's estate, she sold the vehicle with Brown's knowledge and acquiescence and delivered a check to Brown for half of the sales price of the car. Richardson alleged that the other half of the proceeds was divided among Patricia's grandchildren, again with Brown's agreement. In her counterclaim, Richardson asserted that Brown had misrepresented to her that he would divide one-half of the proceeds of the sale of the car and, as a result, she had agreed that Brown would receive more than $13,000 from an annuity to which Richardson was the sole beneficiary. Richardson also moved to transfer venue of the case from Faulkner County to Pulaski County, where she was a resident.

Brown subsequently amended his complaint to allege that, in addition to converting the proceeds from the sale of the car, Richardson had, within days of Patricia's death, withdrawn funds from a bank account that she shared jointly with her mother. In a second amended complaint, Brown added his sister, Sharon Little, as a defendant and asserted that the three siblings had an agreement, in accordance with their mother's wishes, that upon Patricia's death, multiple financial accounts would be combined and equally divided among the children outside of the probate process. The accounts included two Arvest Bank accounts with a combined total balance of more than $104,000; a Jackson National Life Insurance annuity with a $100,000 death benefit; and a MetLife IRA account valued in excess of $36,000. Brown's complaint alleged that Richardson refused to pay Brown his full one-third share of these funds. Specifically, Brown asserted that Richardson's actions breached the siblings' agreement that the funds would be equally divided after Patricia's death and that Richardson converted funds that should have been his.

The circuit court denied Richardson's motion for change of venue to Pulaski County in a written order entered on July 7, 2010. The case then proceeded to a bench trial on July 12, 2011. At the conclusion of the trial, the court announced its ruling from the bench. The court first found that Brown owned the car and was

---

1. Little, while a named defendant below, is not a party on appeal.

2. Brown attached to his complaint a copy of the vehicle's title, showing that it was titled in the names of "Brown, Patricia C. or James D."

entitled to 100% of the proceeds from the sale, or $6850. In addition, the court found that there was an express contract among the siblings to divide the Arvest accounts among them. Those accounts had a combined balance of $104,527.37, from which the court subtracted $450 that Brown acknowledged receiving, leaving a balance of $104,077.37, which, once divided into thirds, resulted in $34,692.46 for Brown's share. As Brown had already received $16,666.66, the court found that Richardson owed him $18,025.80.[3] The court further found that there had been an express agreement among the siblings regarding the Jackson Life account and that, while Richardson had disbursed to Brown and Little approximately $33,333.34 from that account, Brown was still entitled to an additional $6,738.32 from that account.[4] In total, Brown was |4awarded $33,828.38 against Richardson, plus postjudgment interest. A written order memorializing the trial court's rulings was entered on August 4, 2011.

On August 18, 2011, Brown filed a motion seeking attorney's fees in the amount of $37,534.03 and costs of $728.60. The court entered an order on September 14, 2011, awarding Brown $22,520.43 in attorney's fees and $728.60 in costs. The court's order noted that it had reduced the amount of fees requested to sixty percent because the court found that Brown prevailed on only three of the five breach-of-contract claims he pled.

Richardson filed her notice of appeal on August 31, 2011, and she now raises four points for reversal. Richardson contends that the trial court erred in 1) denying her motion for change of venue; 2) finding that Brown was entitled to the proceeds from the sale of the car; 3) determining that there was an express contract to divide the Arvest bank accounts and Jackson National Life Insurance annuity equally;[5] and 4) awarding attorney's fees and costs to Brown.

■■■ When a case is tried by a circuit court sitting without a jury, our inquiry on appeal is not whether there is substantial evidence to support the factual findings of the court, but whether the court's findings are clearly erroneous, or clearly against the preponderance of the evidence. *Pine Meadow Autoflex, LLC v. Taylor*, 104 Ark. App. 262, 290 S.W.3d 626 (2009). |5A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, when considering all of the evidence, is left with a definite and firm conviction that a mistake has been committed. *Robinson v. Villines*, 2009 Ark. 632, 362 S.W.3d 870. In conducting its review of a circuit court's findings of fact, we consider the evidence and all reasonable inferences therefrom in the light most favorable to the appellee. *Murphy v. City of West Memphis*, 352 Ark. 315, 101 S.W.3d 221 (2003). Appellate courts give due regard to the opportunity and superior position of

---

**3.** In its oral ruling from the bench, the court stated that Brown was owed $11,230.50. The court corrected its math and included the proper computation in its subsequent written order.

**4.** The court made other findings that are not raised as issues in this appeal. For example, the court found that there was not enough evidence to find that a contract existed regarding the MetLife account, and thus, that account belonged solely to Richardson upon

her mother's death. The court further awarded Richardson $1,363.90 for legitimate expenses incurred during the sale of Patricia's home, and the court credited Richardson with $3000 that the court determined Richardson had already given to Brown.

**5.** Richardson raises these issues as separate points on appeal, but because her arguments are essentially the same, we treat them together.

the circuit court to determine the credibility of the witnesses. *Combs v. Stewart*, 374 Ark. 409, 288 S.W.3d 574 (2008). A circuit court's conclusion on a question of law, however, is reviewed de novo and is given no deference on appeal. *Id.*

Richardson's first point on appeal is that the circuit court erred in not granting her motion for change of venue and transferring the case to Pulaski County. Before reaching the merits of her argument, however, we must first address a threshold question raised by Brown, who argues that Richardson waived the objection to venue by filing a counterclaim. Generally, an objection to venue is waived if it is not raised properly or if affirmative relief is sought. *See, e.g., Loewer v. Nat'l Bank of Ark.*, 311 Ark. 354, 844 S.W.2d 329 (1992) (defendant waived venue objection by filing a permissive counterclaim). In *Arkansas Game & Fish Comm'n v. Lindsey*, 292 Ark. 314, 730 S.W.2d 474 (1987), the supreme court held that the filing of a third-party complaint constitutes a waiver of a venue objection, but "the assertion of a compulsory counterclaim does not constitute a waiver of objection to venue because of the non-voluntary character of the compulsory counterclaim." *Lindsey*, 292 Ark. at 319, 730 S.W.2d at 477. The question, then, is whether Richardson's counterclaim was permissive or compulsory.

A counterclaim is compulsory if it exists when the claim is filed, arises out of the same transaction or occurrence as the opposing party's claim, and does not require the presence of third parties over whom the court cannot acquire jurisdiction. Ark. R. Civ. P. 13(a). Richardson's counterclaim was compulsory in that both her claim about the distribution of Patricia's assets and Brown's claim about the improper sale of the car arose out of the same family discussions about portions of Patricia's property passing outside of probate. Richardson's counterclaim thus arises out of the same transaction or series of events as Brown's complaint, making her counterclaim compulsory. Because Richardson's counterclaim was compulsory, she did not waive her objection to venue. *Ark. Game & Fish Comm'n v. Lindsey, supra.*

We are nonetheless unable to reach the merits of Richardson's venue argument. In her motion for change of venue, Richardson stated only that the matter should be transferred to Pulaski County because she was a resident there, the cause of action arose there, all witnesses reside in Pulaski County, and the "official records" and other matters related to the case were on record in Pulaski County. On appeal, however, Richardson raises questions concerning whether the general venue provision, Arkansas Code Annotated section 16–55–213(a) (Repl. 2005), repealed by implication a prior, more specific venue provision found in Arkansas Code Annotated section 16–60–111(a)(1).[6] This argument was never raised below, however, and was not ruled on by the circuit court. We do not consider arguments raised for the first time on appeal. *Boellner v. Clinical Study Ctrs., LLC*, 2011 Ark. 83, 378 S.W.3d 745. A party cannot change the grounds for an objection or motion on appeal, but is bound by the scope and nature of the arguments made at trial. *Id.; Yant v. Woods*, 353 Ark. 786, 120 S.W.3d 574 (2003). Addition-

---

6. Section 16–55–213(a) allows a plaintiff to file a civil action in the county in which a substantial part of the events giving rise to the claim occurred, the county in which the defendant resides, or the county in which the plaintiff resides. Section 16–60–111 provides that an action on a debt, account, or note, or for goods or services may be brought in the county where the defendant resided at the time the cause of action arose.

ally, we will not address an argument on appeal if a party has failed to obtain a ruling below. *Simpson Housing Solutions, LLC v. Hernandez,* 2009 Ark. 480, 347 S.W.3d 1. Accordingly, we do not reach the merits of Richardson's venue argument.

 In her second point on appeal, Richardson urges that the circuit court erred in determining that Brown was entitled to the proceeds from the sale of their mother's car. Richardson does not dispute that the car was titled in her mother and brother's names at the time of Patricia's death, nor that Brown was the owner of the vehicle upon their mother's death. She argues, however, that the evidence introduced at trial demonstrated that Brown agreed that the proceeds of the sale should be divided among Patricia's grandchildren. In addition, Richardson contends that the evidence showed that Brown received $3000 from the sale of the car to distribute to his children and that Brown also accepted $450 of the remaining proceeds to pay for a family dinner. Thus, Richardson asserts, the evidence showed that Brown agreed to the sale and division of the proceeds, and the circuit court erred in finding otherwise.

As Brown points out, however, the only testimony indicating that he agreed to the sale of the car came from Richardson and her husband. In its ruling, the circuit court indicated that it felt the matter came down to a credibility issue, noting that it was clear that Brown firmly believed that he did not get the $3000, and Richardson firmly believed that Brown did get the money. Ultimately, the court found that Richardson owed Brown the money from the sale of the vehicle, but it credited Richardson with the $3000. In these circumstances, we hold that the circuit court

weighed the credibility of the witnesses, as is its duty. Conflicts in the testimony are for the circuit court to resolve, and we will defer to the circuit judge's superior position to judge and determine the credibility of witnesses. *Dewitt v. Johnson,* 349 Ark. 294, 77 S.W.3d 530 (2002).

 Richardson's next two arguments pertain to the Arvest bank accounts and life insurance annuity, in that she contends that the circuit court erred in determining that there was an express contract or agreement to divide the funds equally. As to the two Arvest accounts, Richardson asserts that she and her mother held the money market account as a joint account with right of survivorship, and her sister and mother held the preferred club account in the same fashion.[7] Richardson also notes that she was the sole beneficiary of the Jackson National Life Insurance annuity. Richardson thus claims that, because a surviving joint tenant of an account owns the proceeds, she became the sole owner of these funds and had the right to withdraw the money as she pleased, and the circuit court erred in finding that an agreement to equally divide the accounts among the siblings existed.

 While it is true that the creation of a joint bank account with right of survivorship, in the absence of fraud, is conclusive evidence of the parties' intent that the account should pass to the survivor on the death of the other, *see Williams v. Davis,* 2009 Ark. App. 850, at 8, 373 S.W.3d 381, 386, this general rule does not prevent the surviving co-owner from making a different disposition. *See Avance v. Richards,* 331 Ark. 32, 959 S.W.2d 396 (1998). In this case, there was conflicting evidence regarding the existence of an agreement to divide the bank balances and annuity funds. For example, Brown testi-

7. After Patricia's death, Sharon Little added Richardson to the preferred club account.

fied that he and his siblings met after their mother's funeral and agreed that the money in the bank accounts and annuities would be divided three ways. While Richardson testified that no agreement was reached that day, she went on to say that she agreed to "split everything" with her siblings after she received the funds from the annuity. Moreover, we note that Richardson's counterclaim was premised on the existence of an agreement between the siblings, and her answer to Brown's second amended complaint conceded that she divided the Jackson National Life annuity with Brown (although she claimed this was in an attempt to be "equitable," rather than in accordance with any agreement with Brown).

In finding that an agreement existed, the circuit court relied on Richardson's admission and testimony. Although there was conflicting testimony regarding an agreement between the parties, we must recognize the circuit court's superior position to judge the credibility of witnesses and resolve any conflict in the testimony. Such a finding is usually conclusive, especially where, as here, the credibility of witnesses is involved. *See Firstbank of Ark. v. Keeling*, 312 Ark. 441, 850 S.W.2d 310 (1993).

Richardson's final argument on appeal concerns the trial court's award of attorney's fees to Brown. Brown has filed a motion to dismiss this portion of the appeal because Richardson failed to file a notice of appeal from the order awarding attorney's fees.[8] We agree with Brown and conclude that we lack jurisdiction to consider Richardson's argument on this point.

The underlying judgment was entered on August 4, 2011. Brown timely filed his motion for attorney's fees on August 18, 2011, and Richardson filed her response to Brown's motion for fees on August 31, 2011. Richardson also filed her notice of appeal from the judgment on that same date. The notice of appeal, however, did not mention the issue of attorney's fees. The circuit court issued a separate judgment awarding Brown's attorney's fees on September 14, 2011, and Richardson failed to file an amended notice of appeal after the entry of the fee award.

The supreme court has held that, where an order granting or denying attorney's fees is entered after entry of the judgment, the issue of attorney's fees is a collateral matter. *Craig v. Carrigo*, 353 Ark. 761, 121 S.W.3d 154 (2003). As such, the challenging party must file a notice of appeal from the fee order, and without such a notice, this court will not address any argument on the fee issue. *Id.* at 777, 121 S.W.3d at 164. Arkansas law is well settled that the failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *Id.* This rule applies to orders granting attorney's fees. *Id.* We therefore lack jurisdiction over this issue due to Richardson's failure to file a notice of appeal from the circuit court's order awarding attorney's fees to Brown.

Affirmed in part; dismissed in part.

VAUGHT, C.J., and GLOVER, J., agree.

---

8. Richardson did not respond to Brown's motion to dismiss.